GARNER, APPELLANT, *v.* THE B. F. GOODRICH RUBBER CO., APPELLEE.

(Decided June 8, 1938.)

*Messrs. Gottwald, Breiding & Hershey,* for appellant.

*Messrs. Waters, Andress, Wise, Roetzel & Maxon,* for appellee.

DOYLE, J. We have heretofore, in the case of *Uden v. B. F. Goodrich Co.,* 58 Ohio App., 151, 16 N. E. (2d), 277, determined that a finding by the Industrial Commission that a claimant is not a dependent is a jurisdictional question. While the determination of that point does not specifically appear in the report of the case, the demurrer of the defendant mentioned on page 153 of the report was based upon that question; and we still adhere to that ruling.

This appeal on questions of law from the Court of Common Pleas of Summit county involves a construction of Sections 1465-82 and 10503-15, General Code of Ohio.

The appellant, Carieta Hicks Garner, as guardian of Joe Zack Garner, Jr., claims that her ward is within the class of persons who are entitled to death benefits under the Workmen's Compensation Law, and therefore is entitled as a matter of right to an award under the law as a result of the accidental death of his father, Joe Zack Garner, Sr., which occurred in the course of his employment with the appellee company. The accidental injury and death in the course of the employment of Joe Zack Garner, the father, is conceded, and the sole question for determination is the status of his son, the ward of the guardian plaintiff.

In the Court of Common Pleas a jury was waived and a trial was held. The court found that, on "both the law and fact in this case," said child, Joe Zack Garner, Jr., "is not a dependent within the purview of Section 1465-82, General Code, and therefore not entitled to participate in the insurance fund."

At all times mentioned herein, Section 1465-82, General Code, was in part as follows:

"4. The following persons shall be presumed to be wholly dependent for the support upon a deceased employee:

"(A) A wife upon a husband with whom she lives at the time of his death.

"(B) A child or children under the age of sixteen years * * * upon the parent with whom he is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of his death.

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless a member of the family of the deceased employee, or bears to him the relation of husband, or widow, *lineal descendant*, ancestor or brother or sister. The word 'child' as used in this act *shall include a posthumous child,* and a child legally adopted prior to the injury." (Italics ours.)

Section 10503-15, General Code, reads:

"When by a woman a man has one or more children, and afterward intermarries with her, such issue, if acknowledged by him as his child or children, will be legitimate. *The issue of parents whose marriage is null in law, shall nevertheless be legitimate.*" (Italics ours.)

A meticulous analysis of the following facts, in the light of the statutes, is essential for the proper disposition of this appeal, and for the purpose of convenience the facts will be set out chronologically.

June 25, 1931: Carieta Hicks (guardian and mother of Joe Zack Garner, Jr.) was married to George Bridger in West Virginia. The married couple were Akron

residents, and after the marriage returned to Akron and lived together for approximately one year.

December 14, 1932: George Bridger was awarded a decree of divorce from his wife, Carieta.

June 6, 1933: Carieta, under the name of Carieta Bridger, was married to Fred Slabaugh in West Virginia. After the marriage they returned to Akron and vicinity. They lived together for a few days and were then separated following the arrest of Slabaugh in the city of Cleveland.

June 13, 1933: Carieta and her husband, Slabaugh, were separated. They never again cohabited with each other. (This fact is derived from the undisputed testimony of Carieta.)

October 5, 1933: Carieta met for the first time Joe Zack Garner, a young student in the University of Akron, and who was employed at the same time by the Akron plant of the appellee company.

November 11, 1933: Carieta and Garner, while visiting at the home of a mutual friend, consummated the act of sexual intercourse. Joe Zack Garner, Jr., was conceived. The couple lived together in adultery from this time until their marriage.

April 13, 1934: Carieta married Garner in West Virginia. She became a bigamist for the reason that Slabaugh was living and she was undivorced. They returned to Akron and established a household.

August 16, 1934: Garner died as the direct result of an accidental injury received in the course of his employment at the appellee company.

August 29, 1934: Joe Zack Garner, Jr., was born to Carieta.

The evidence, undisputed, established the fact that at the nuptials on April 13, 1934, Garner knew of the condition of pregnancy of Carieta and openly acknowledged to their friends and relatives the paternity of the expected baby. He selected a doctor for her prenatal care and at all times represented to the doctor

that on the natal day he would be the father of the child. The couple attended many parties together, and, on several occasions, presents were given by their friends and relatives, to become a part of the layette for the baby. The open acknowledgment by Garner of the parentage of the expected child was notorious and certain. The immutable laws of gestation were in harmonious operation with respect to actions and time.

How stands the record in the light of the statutes, *supra*? What is the status of a child born posthumously from parents whose marriage was void in law because the woman was at the time of the said marriage the wife of another, and which child was conceived prior to the void marriage?

The word "child" as used in Section 1465-82, General Code, *supra,* means one that is legitimate because born in lawful wedlock, or one legally adopted prior to the employee's death (*Staker, Gdn.,* v. *Industrial Commission,* 127 Ohio St., 13, 186 N. E., 616), or one legitimated under the provisions of Section 10503-15, General Code.

The two sections of the General Code, Section 1465-82, and Section 10503-15, are *in pari materia* and must be construed with reference to each other.

When a married woman, not living with her husband, by adulterous relations with a single man, becomes pregnant, and afterwards marries such single man, and they continue to live together as husband and wife, and such expected child is publicly aknowledged by them as their expected child, such child when born is legitimate, even though such man dies two weeks before said child is born, and even though such marriage is null in law.

The conclusion we have reached in the instant case is not in conflict with the decision announced in the case of *Staker, Gdn.,* v. *Industrial Commission, supra.* In that case neither of the parents were ever married, and, of course, there was no claim that the child was

legitimate under the provisions of Section 10503-15, General Code, *supra*.

The judgment of the trial court is reversed; and the ultimate facts of this case not being in dispute, this court, proceeding now to render the judgment which the trial court should have rendered, orders that final judgment in favor of the claimant (appellant) be awarded.

Judgment reversed and final judgment for appellant.

*Judgment reversed.*

STEVENS, P. J., and WASHBURN, J., concur.