Marion B. FOLSOM, Secretary of Health, Education and Welfare, Appellant,

v.

Pauline FURBER, on behalf of Roberta Miller and Allen L. Miller, Minor-claimants, Appellee.

No. 13398.

United States Court of Appeals Sixth Circuit.

May 22, 1958.

Seymour Farber, Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Samuel D. Slade, and Seymour Farber, Washington, D. C., Sumner Canary, U. S. Atty., Cleveland, Ohio, on the brief, for appellant.

Isadore R. Rosenblatt, University Heights, Ohio, on the brief, for appellee.

Before SIMONS, Chief Judge, and MARTIN and BAZELON, Circuit Judges.

PER CURIAM.

In this case, the district court held that a now deceased former wage-earner, Andrew A. Miller, entered into an agreement with Pauline Furber, appellee [then the divorced wife of John Marti], in September of 1939, to live together as common-law husband and wife; that, thereupon, they entered into that status and lived together continuously until his death on April 21, 1944, during which time they held themselves out to their relatives and friends, as well as to strangers, as husband and wife; that two children were born of their relationship, namely, Roberta Miller (born August 30, 1940) and Allen Miller (born July 12, 1943); and that their common-law father, Andrew A. Miller, "acknowledged them to be his children by every conceivable means thereby legitimatizing said children under the laws of the State of Ohio."

The district court denied the motion of appellant for summary judgment and granted the motion of the appellee, mother of the minor children, for summary judgment, recognizing Roberta and Allen Miller to be entitled to social security benefits under the Social Security Act as the legitimate children of the wage-earner, Andrew A. Miller. It was held that child's insurance benefits were awarded to Roberta and Allen Miller [minor-claimants] as the children of the fully or currently insured wage-earner, Andrew Miller, [as defined under the Social Security Act] from and after April 29, 1944, which was the date on which Pauline Miller [later Furber], claimant, applied for widow's insurance benefits for herself and for child's insurance benefits for each of the two children, Roberta and Allen Miller.

United States District Judge Connell, highly experienced in the interpretation of Ohio law, in a logically reasoned opinion discussed the applicability and meaning of such law and decided that the children fell within the provisions of the Ohio Revised Code, section 2105.18, and were therefore entitled to Social Security benefits under the Social Security Act, 42 U.S.C.A. § 301 et seq.

The Ohio statute provides: "When by a woman a man has one or more children, and afterwards intermar-

ries with her, such issue, if acknowledged by him as his child or children, will be legitimate. The issue of parents whose marriage is null in law, shall nevertheless be legitimate." Gen.Code, § 10503–15. The district judge well stated that the reason and spirit of that section of the Ohio Code "is to legitimatize children; to permit legitimatized children to inherit from the father as well as the mother; and to protect innocent offspring from punishment for the sins committed by their parents." The following Ohio authorities were cited: Wright v. Lore, 12 Ohio St. 619; Carmichael v. State, 12 Ohio St. 553; Clinton County Nat. Bank & Trust v. Todhunter, 43 Ohio App. 289, 183 N.E. 88; Bates v. State, 9 Ohio Cir.Ct.R.N.S., 273.

The district court also quoted 26 O.Jur. 93, to the effect that in a civil action a marriage may be established by showing that the parties lived together, and cohabited as husband and wife for a series of years; and that they were so treated and reputed to be in the community and circle wherein they moved, although no witnesses testified that they saw the couple marry.

██ Pauline Miller Furber testified that on the day he returned from a three or four months' trip West, Miller told her that he had been divorced from his wife so that they could be married. Asked why they had not had a "ceremonial marriage," she replied that Miller told her they would live together as man and wife for a while, which would be legal, until he arranged his financial affairs, whereupon they would be married in church. She said that she loved the man and took him at his word. She stated further that Miller put his hand on a Bible and asked, "Pauline, will you take this man for your wedded husband?" She testified that she had replied: "I take Andrew for my husband"; that he then "reversed the words" and said, "I take Pauline as my wife."

Upon consideration of the entire record in the case and of the opinion of the district judge, we affirm his judgment.

BAZELON, Circuit Judge (dissenting).

I join the court in following the District Court's construction of Ohio law legitimatizing the wage-earner's children.

The District Court's order, however, also directed that child's insurance benefits be paid to appellee "from and after April 29th 1944." This is the date of the first application, filed by appellee on her own and the two children's behalf, which the Bureau of Old Age and Survivors Insurance rejected on July 15, 1944, and which she thereafter abandoned. The application upon which the present suit rests was filed by appellee eleven years later, on June 7, 1955, and only on behalf of the children.

Section 202(j) (1) of the Social Security Act, 42 U.S.C.A. § 402(j) (1), limits retroactivity of benefits to a year prior to the date of the application. The question whether the benefits here involved should be geared to the 1944 application or the 1955 application was not specifically in issue at any stage of the proceedings below. By assuming that appellee's abandonment of the 1944 application was not binding upon her children, one can gear the benefits to that early application. But what this court now assumes is a matter that was not considered below. Moreover, the effect of abandonment may well turn upon a finding as to what the attendant circumstances were. I think sound principles of judicial administration require that the administrative agency be afforded the opportunity, in the first instance, of passing upon this issue.[1] I would therefore reverse and remand to the agency with appropriate instructions for that purpose.

1. Other questions not considered below relate to the finality and appealability of the rejection of the 1944 application. These questions as well, I think, should not be disposed of on this appeal. To the extent that they should remain in the case, it would be time enough to consider them judicially after further administrative action.