Ann WOLF, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 17475.

United States Court of Sixth Circuit.

Dec. 14, 1967.

Paul H. Tobias, Cincinnati, Ohio, for appellant, Goldman, Cole & Putnick, Cincinnati, Ohio, on the brief.

Thomas R. Smith, Asst. U. S. Atty., Cincinnati, Ohio, for appellee, Robert M. Draper, U. S. Atty., Cincinnati, Ohio, on the brief.

Before McCREE and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

■ This is an appeal from a judgment of the United States District Court for the Southern District of Ohio, Western Division, sustaining a final decision of the Secretary of Health, Education and Welfare denying social security benefits to the son of a deceased wage earner. The action was brought in the District Court for a review of the Secretary's decision under Section 405(g), Title 42, U.S.C. The jurisdiction of the District Court is limited to a review of the proceedings before the Secretary and its judgment is final except that it may be reviewed in the same manner as a judgment in other civil actions. The Court of Appeals, in reviewing the decisions of the Secretary and of the District Court, is bound to accept the Secretary's findings of fact if supported by substantial evidence, but is not bound to accept his conclusions of law. Galli v. Celebrezze, 339 F.2d 924, (C.A.9). See also, Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The application was filed in the name of Ann Wolf on behalf of her son and she is the plaintiff-appellant in this action. We will refer to her as Ann or plaintiff. In 1935 the plaintiff separated from her husband, Edwin Wolf, to whom she was legally married by virtue of a ceremonial marriage. They were the parents of a son, Edwin. This marriage was never legally terminated and the husband, Edwin Wolf, was living throughout the relationship of the plaintiff and Irwin Drake as hereinafter described.

In 1936 the plaintiff began living with Irwin Drake. They lived together continuously as man and wife for more than twenty-six years. They held themselves out as man and wife and were known as such in the community and to their families and friends. Ann testified that after two years she thought they were married and Mr. Drake said: "You are

my wife." At this time Ann was pregnant. She gave birth to Pauline who only lived a short period of time. In 1948 Mr. Drake bought Ann rings and he placed them on her finger in the presence of a witness, saying in effect, "Now you are my wife." They celebrated this occasion and thereafter considered it their wedding anniversary. At the time of this ring presentation, Ann was pregnant. Shortly thereafter she gave birth to a son, John, who is the subject of this action. Mr. Drake died in December, 1961. Both Ann and Mr. Drake, at the time they began living together, were aware of the existing undesolved marriage of Ann.

In determining whether a child meets the qualifications to be entitled to insurance benefits,[1] Section 416(h) (2) (A), Title 42, U.S.C. provides that:

"(T)he Secretary shall apply such law as would be applied in determining the devolution of intestate personal property * * * by the courts of the State in which he was domiciled at the time of his death, * * * "

An illegitimate child does not inherit by intestate succession in Ohio, but Section 2105.18, Ohio Revised Code, provides:

"When a man has children by a woman and afterwards intermarries with her, such issue, if acknowledged by him as his children, will be legitimate. The issue of parents whose marriage is null in law shall nevertheless be legitimate."

The question before us is whether the relationship between Ann and Mr. Drake constituted a marriage null in law.

■ The findings of the hearing examiner and the appeals council were that but for the existing marriage of Ann, there was a valid common law marriage between Ann and Mr. Drake. The opinion of the district judge was based on the same assumption. Although it may be considered that there was no

---

1. Under amendment to the statute (Section 416(h) (3) (C) (ii) the claimant is allowed child's benefits for the period subsequent to September, 1965. The dispute herein only involves benefit payments prior to the date of the amendment.

present intention to effect a common law marriage at the time the parties started living together there is substantial evidence to show that such a present intent was expressed on two occasions thereafter: one, after living together for two years and, two, at the time of the ring ceremony. In addition to these two specific instances there is an irrefutable implication that they intended their cohabitation together to be a marital relationship. Both the appeals council and the district judge found that but for the fact that Mr. Drake knew of Ann's existing marriage their relationship would have constituted a marriage null in law. They held that because Mr. Drake knew of Ann's existing marriage there was not good faith in their attempting to enter into a common law marriage and that there was therefore no marriage at all. The theory was that one of the parties must be innocent of any knowledge of an impediment to a marriage in order to constitute a marriage null in law. If both parties know of the impediment there is a void marriage or no marriage at all. In other words, they held that the element of good faith must be present to have a marriage null in law.

This element of good faith seems to have been engrafted on the law of Ohio in Santill v. Rossetti, Ohio Com.Pl., 178 N.E.2d 633. In arriving at its conclusion that there must be an absence of knowledge, and therefore good faith, on the part of one of the parties to the marriage, the court relied on Luther v. Luther, 119 W.Va. 619, 195 S.E. 594. The decision in *Santill*, supra, was by the Court of Common Pleas of Ashtabula County, Ohio. The Court of Common Pleas in Ohio is a court of original jurisdiction and its final judgments are not binding precedent on any other court in Ohio. While not binding precedent, the opinions of judges of the Court of Common Pleas have weight to the extent that their reasoning and conclusions are persuasive. It is said by counsel for both parties that the question before us is one of first impression in Ohio. This is true to the extent that no court of last resort in Ohio has ever specifically passed on the requirement of good faith, as used here, or the lack of it, in connection with a marriage null in law. We think the question can be determined from the Ohio cases and we proceed to examine them.

Wright v. Lore, 12 Ohio St. 619, is one of the early cases in Ohio on the subject of marriages null in law. Hiram Wright was married in Canada in 1822 and had the plaintiff as issue of that marriage. In 1833, while his wife was still living, he came to Ohio and married another woman who was ignorant of his former marriage. They lived together as man and wife and had four children. Upon Wright's death a question arose as to whether the four children were legitimate heirs of their father.

The court said:

"We are asked to construe the expression 'deemed null in law,' as applicable only to marriages which are voidable, and require a judicial sentence to establish their nullity. We do not feel authorized so to limit the language of the statute. We think the innocent children of the marriage *de facto* in this case, although that marriage must be deemed in law a nullity, come within the letter and spirit of the enactment."

While the second wife did not know of the former marriage of her husband, there is no discussion that such innocence was required to constitute a marriage "deemed null in law". We understand that the court used the phrase "deemed in law a nullity" as synonymous with the term void or no marriage.

In Carmichael v. State, 12 Ohio St. 553, Carmichael, while still legally married, entered into a ceremonial marriage with another woman. The one who performed the ceremony was without authority or license to do so but the parties cohabited as man and wife. Even though the marriage was a nullity because of the husband's incapacity to marry, the court held it was such a

marriage as would support a conviction of the husband for bigamy.

In Morris v. Williams, 39 Ohio St. 554, the question was whether Edmund Williams was the legal heir of his father Thomas Williams. Thomas Williams and Katie, both slaves, were married in a ceremonial marriage in Virginia in 1817. Edmund was the only issue of this marriage. Katie subsequently died and Thomas came to Ohio. He married Lavina Ash who at the time had several children. Upon the death of Thomas in 1856 Lavina came into possession of his real estate, the subject of this action. Upon becoming free in 1863 by virtue of the Emancipation Proclamation, Edmund came to Ohio and brought suit for possession of the real estate. Because slaves, under then existing Ohio law, did not have capacity to contract, it was claimed that Edmund was not a legitimate son of Thomas and therefore could not inherit. It was also claimed that the issue of slave marriages could not have been contemplated when it was provided that the issue of marriages null in law, should be legitimate. The court said at p. 557:

"If we assume it (the Virginia marriage) even to have been void, the case is controlled by the provision quoted. (The statute on marriages null in law.) If it was voidable, the case is still controlled by the statute, if, indeed, any such provision as to a voidable marriage was necessary."

The court said further at p. 558:

"It is a familiar rule in the construction of statutes, that the language, where clear and comprehensive, is not to be limited in view of the particular instances which may be supposed to have led to its adoption, *but the act should be held to embrace all cases fairly coming within its terms, if they are also within its reason and spirit.*" (Emphasis added.)

In Garner v. B. F. Goodrich Co., 64 Ohio App. 300, 28 N.E.2d 652, affirmed 136 Ohio St. 397, 26 N.E.2d 203, a woman with an undivorced husband living began living with Joe Zack Garner. A few months later, still undivorced, the woman entered into a ceremonial marriage with Garner. At the time of the marriage, the wife was pregnant and a few months later gave birth to a child. A few days before the birth the husband died as a result of an accident. The child was held to be legitimate under the statute under consideration before us and entitled to compensation under Workmen's Compensation Law. The facts do not show whether the husband knew of the wife's former marriage. It would appear that he must have known about it. However, no issue was made of this and the court did not hold that there must be a lack of knowledge on the part of the husband to constitute a marriage null in law.

In Clinton Co. Nat'l Bk. & Tr. Co. v. Todhunter, 43 Ohio App. 289, 183 N.E. 88, the question arose as to whether Virgie Lee Sells was entitled under the will of Sophia Venneman to a share of the estate. The will provided that the residue of the estate was to go to the testator's nieces and nephews, the children of her full brothers and sisters and her half brothers and sisters. Isaac Pavey, brother of testatrix, while his wife was still living, met the mother of Virgie Lee Sells. They became intimate and later went to Texas. Upon their return to the vicinity of their former home, they claimed that they were married and acknowledged the child, Virgie Lee Sells, as their own. The court held that as a child of the brother of the testator she qualified under the will. In answer to the claim that the testatrix intended only the legitimate children of her brothers and sisters, the court went on to decide that issue. At p. 293, 183 N.E. at p. 90, the court said:

"She was beyond question the issue of *parents* who were married to each other, and though such marriage was null and void, as such issue she is 'nevertheless, legitimate.' "

While it is not stated whether the wife knew of the former marriage, good faith is not set up as a requirement to constitute a marriage null in law.

In Folsom v. Furber, 256 F.2d 120, this Court held that children of a big-

amous common law marriage were legitimate under Section 2105.18, Ohio General Code. It is true that the wife testified that she did not know of the husband's prior marriage but again there was no discussion that good faith was a condition precedent to the establishment of a marriage null in law.

See also Abelt v. Zeman, Ohio Com.Pl., 173 N.E.2d 907, a decision of the Court of Common Pleas of Cuyahoga County, Ohio.

Ives v. McNicoll, 59 Ohio St. 402, 53 N.E. 60, 43 L.R.A. 772, involves that part of the statute which provides that a subsequent marriage legitimates children born out of wedlock where the husband acknowledges them as his own. The court held that the purpose of the statute was to protect the innocent offspring and not to visit the sins of the parents on them. At p. 418, 53 N.E. at p. 62, the court said:

"That our statute was intended for the benefit and protection of the innocent offspring, and not for their punishment on account of sins committed by their parents, is shown by the cases of Wright v. Lore, 12 Ohio St. 619; Morris v. Williams, 39 Ohio St. 554."

If the purpose of the statute is to protect the innocent offspring, it is difficult to understand the reasoning of the appeals council and the court in this case. If the husband does not know of his wife's existing marriage and only his wife sins, the children are protected, but if the husband has knowledge of the existing marriage and therefore also sins, the children are not protected. Clearly, in those cases which involve the first clause of the statute, both parties commit the sin of fornication or adultery, yet it is held that their children are legitimated by a subsequent marriage. We can see no sound reason for this distinction or for withholding legitimacy from the children of a bigamous marriage simply because both parties knew that they were entering into a bigamous marriage.

No Ohio case has been cited to us, nor have we found any, where the facts disclosed that both parties knew of an existing marriage of one of the parties. But in all of the cases we have read with reference to the application of the statute, not one of them raises the question or discusses the requirement of good faith. In some of the cases, Garner v. B. F. Goodrich Co., supra; Clinton Co. Nat'l Bk. & Tr. Co. v. Todhunter, supra, it would seem that the circumstances were such that knowledge would have been apparent.

In Santill v. Rossetti, supra, the wife had no knowledge of the husband's existing marriage until she was in the hospital for the birth of her first baby. There was no need then for the judge of the Court of Common Pleas to inject the element of good faith into his opinion. It is pure dictum and we are not persuaded by his logic.

Ohio recognizes common law marriages and the law makes no distinction between a bigamous common law marriage and a bigamous ceremonial marriage; nor do we. A null marriage is one that does not exist in law. But the legislature has said that where a relationship exists which, but for some defect, would be a valid marriage and children are born as the issue of the marriage, those children are legitimate. We conclude that the relationship between the parties here was a *de facto*[2] marriage such as the legislature intended to be covered by the term "null in law" and comes within the letter and spirit of the statute.

The judgment of the District Court is reversed and the case remanded to the Secretary with instructions to grant the plaintiff's application for benefits to John Wolf, in accordance with Section 402(d) (1), Title 42, U.S.C.

**2.** Webster's New World Dictionary of the American Language, College Edition, defines "de facto" as "in fact; actual (regardless of legal or moral considerations)."