**Lemon J. TOWNSEND, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCA-TION AND WELFARE, Defendant.**

**No. 1840.**

United States District Court
E. D. Kentucky,
Lexington Division.

Feb. 26, 1969.

Fowler, Rouse, Measle & Bell, by Darrell B. Hancock, Lexington, Ky., for plaintiff.

George I. Cline, U. S. Atty., by Moss Noble, Asst. U. S. Atty., Lexington, Ky., for defendant.

MEMORANDUM

SWINFORD, Chief Judge.

The plaintiff, Lemon J. Townsend, brings this action under the provisions of 42 U.S.C. § 405(g). His application for disability benefits was filed on June

1, 1967, and was processed administratively. The application was denied initially on September 12, 1967. A reconsideration was requested by the plaintiff. The claim was re-evaluated, reviewed by the Social Security Administration and again denied on November 13, 1967. A hearing was then requested, at which the plaintiff appeared with his attorney, Mr. Darrell Hancock, and testified. A vocational expert also testified at the hearing. Thereafter, on February 21, 1968, the hearing examiner found that the plaintiff was not entitled to disability benefits under the provisions of the Act and on April 19, 1968, the Appeals Council adopted the decision of the hearing examiner as its own. It thus became the final decision of the Secretary.

This action was timely filed on April 30, 1968, and is now before the court on the defendant's motion for summary judgment. A certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based, has been filed. The parties have also filed briefs.

The plaintiff is fifty years of age. He has little education, and, although he quit at age sixteen, he was still in the first grade. He attributes this to the fact that he lived in a more or less isolated section (at that time) of Eastern Kentucky near Slade and he "didn't get to go to school very much." (Tr–32)

In 1937 he joined the CCC corps. At this time he was eighteen or nineteen years of age and could only sign his name by an X mark. However, after schooling in that organization he learned to read and write. He served in the Army as a machine gunner in World War II from 1941 until 1944. While at Pearl Harbor in 1943 on war maneuvers he was hospitalized with tuberculosis. After six months in the hospital he was discharged with a fifty per cent disability. From May 1944 up until 1955, Mr. Townsend lived and worked on a farm in Powell County, Kentucky. The disability (from tuberculosis) was changed to thirty per cent in 1955. When questioned as to his work experience, he replied: "Labor work and I've been (a) painter since 1954." (Tr–32)

The plaintiff's application for disability benefits states that he became disabled to work in May 1967 and that this disability is from diabetes, high blood pressure, hernia, allergy and inactive tuberculosis. (Exhibit 1, Tr–55)

For about six or seven months prior to the date of the alleged disability, the plaintiff worked as a spray painter at Avon (Blue Grass Army Depot near Lexington, Kentucky). This job was terminated by his foreman because of a physical disqualification. Dr. S. S. Shouse, Medical Officer at the Army depot, gives the following reasons for this action:

"Preplacement physical examination of 12 December 1966—Mr. Townsend stated that he had a VA rating of 30% disability for healed tuberculosis. At the time of this examination, his blood pressure was in the upper limits of normal. A chest Xray showed slight increased shadows of both upper lobes, but no active disease. Mr. Townsend was considered borderline employable and was conditionally qualified.

On 19 May 1967, Mr. Townsend was given a complete physical examination and at this time was found to be 'Not Qualified' for his job as Painter, W–7. A chest Xray taken on this date revealed increased peribronchial thickening, but no active disease. History of patient indicated he felt weak, dizzy, nervous, and had gastrointestinal complaints, for which he had studies at the University of Kentucky Medical Center, Lexington, Kentucky. Blood pressure readings were above normal. During this examination, Mr. Townsend stated: 'Working in the paint makes me sick and gives me a headache. Don't think I can stay in it. I feel nervous. My stomach is sore, rolling, and jumping like a heart throbbing'.

Mr. Townsend has been treated in the dispensary on three occasions:

19 April 1967. Chief complaint was weakness and dizziness. Blood pressure was checked and found to be elevated 172/98. His private physician was contacted and an appointment arranged for the following day. He was given an hour's bed rest and sent home.

2 May 1967. Employee reported to the dispensary for a 'return to duty' examination following an absence from 19 April to 2 May 1967. He stated he had been under treatment at the University of Kentucky Medical Center for high blood pressure, sugar high, and a small epigastric hernia. Blood pressure on this examination was elevated 160/96. He stated he felt like working and was returned to duty.

18 May 1967. Mr. Townsend reported for a physical examination. He was given medication for nervousness. His physical examination was completed on 19 May 1967." (Tr–104–105)

The record discloses that from April 20, 1967, to May 11, 1967, the plaintiff was apparently an out patient at the University Hospital, University of Kentucky Medical Center, Lexington, and was seen on four occasions. This is evidenced by a seven page report from the hospital entitled, "History—Physical—Progress Notes". (Tr–91–96) This report consists mainly of a history of the plaintiff's complaints, lists certain findings as a result of examination and tests and the treatment prescribed. The complaints include a burning sensation in his stomach, sometimes relieved by antacids, a slight weight loss, headaches, abdominal soreness and weakness. Physical examination and tests were essentially normal. On April 27, 1967, the report lists "Impressions (1) mild diabetes mellitus (2) functional upper G.I. disease", and lists recommended medication. (Tr–95)

On May 4, 1962, the report states: "Patient still having vague complaints of abdominal pain & weakness. * * *

He was advised that he was doing well but that he wouldn't be entirely free of his symptoms. He will be seen today for episodes of sneezing and ? paint fumes allergy he may have." (Tr–96) The plaintiff offered as an exhibit a diet list and some air borne allergens. (Exhibit 20, Tr–106) He stated that it was given to him by Dr. Lloyd Mayer at the University Hospital and that he had stayed on the diet as best he could. (Tr–42)

On September 28, 1967, the plaintiff was admitted to the Veterans Hospital, Lexington. On October 2, 1967, Dr. Janet M. Boog, a physician at that institution made the following report:

"ADMISSION NOTE: This is a 49 year old, married man, who has been married twice for the past eighteen years. He has two married children. He was in the service 1941 to 1944. He is service connected 30% for tuberculosis. It is now arrested. Patient hasn't worked since June 9. Was at Avon for 6 months. Before that worked for different contractors. He says he came into this hospital for his present admission because he feels like he has to move all the time. He has to get up at night, he has had to do this for about one month. He has lost fifteen pounds in the past two or three months. He says he can't work because he feels weak and nervous. He and his wife, who has emphysema, sits around the home and don't do very much except commiserate with each other.

MENTAL STATUS: This is a nervous, mildly depressed man, who sits beside the desk and tells a story, he relates not too well to the examiner. Mood: He is mildly depressed. Verbalization: He spends most of his time speaking about his various somatic complaints, from tuberculosis old, headaches, backache, leg ache, stomach trouble, urinary bladder trouble, prostate trouble, etc. Content of thought: He denies delusions, hallucinations, convulsions, and blackout spells. Apparently he thinks only of

his various somatic complaints and probably of his diseases almost a phobic attack and underlying anxiety reaction. Sensorium: He is well oriented. He has no difficulty with recent or past memory. Insight: Slight. Judgment: Good.

IMPRESSION: Anxiety reaction; manifested by multiple somatizations possibly some of them being psychophysicallogical at this point and others merely the results of focusing on various small twinges and tics.

Pulmonary tuberculosis, inactive.

COMPETENCY: Competent." (Tr–97)

On October 26, 1967, in a Report of Contact (Exhibit 14, Tr–89), there is the following statement:

"Dr. Boog said that W/E (wage earner) was improving satisfactorily and should be able to return to work as soon as he is discharged by 11–15." (Tr–89)

However, on November 2, 1967, the plaintiff left the hospital and the final summary of the Veterans Hospital (Lexington) states:

"This patient was admitted for the first time on 9/28/67. He stated he came to the hospital because he could not remain still; he had to move all the time. He states he has been unable to eat and has suffered a 15 pound weight loss. He was nervous, depressed, and unable to relate adequately to the examiner on admission. He was placed on a closed ward with milieu therapy and medications of Elavil 25 mgm q. i. d., M–?–ril 100 mgm t. i. d. He made a good adjustment to hospital routine and was given full privileges and placed on an open ward 10/12/67. He was seen in the urology clinic because of dysurea and dribbling and the consultant requested he be returned to the clinic. However, after his leaving the hospital without permission the patient did not return. On 11/2/67 the patient left on a 10 day leave of absence and did not return. He was encouraged to return but would not. Subsequently discharged from unauthorized absence on 11/21/67. He is competent and can work at full time employment." (Tr–103)

Mr. Charles Elton, a vocational expert, testified that in his opinion the plaintiff was still able to perform the duties of a painter. He took into consideration that a person with hypertension should not stand on a scaffold or high ladder and that the fumes from spray painting would aggravate "any person breathing those elements". He also testified that Mr. Townsend could do a wide variety of entry-type jobs in the labor market in this area, or any other area. However, he felt that since the plaintiff was such a qualified and experienced painter and the pay was so much better that if he were advising him as a counselor he would advise him to continue in this line of work. The job description of the duties of the plaintiff while he worked at Avon show that he is quite skilled in this line of work. (Tr–76)

In a Report of Disability Interview (Exhibit 11, Tr–80) his job duties as a painter are described as follows:

"He did both inside & outside painting. More small brush work inside—Painted residences & commercial buildings. Mostly low work—Never worked on scaffold or swing." (Tr–80)

As Mr. Elton pointed out, the demand for this type of painting has been quite high for the past five years due to the economic activity in this area. "There's been a tremendous amount of construction activity, building plants, buildings for schools, hospitals, remodeling and the like." (Tr–48)

The findings and decision of the Secretary are as follows:

"1) The Hearing Examiner finds that the claimant meets the special insured status for social security benefits and he will continue to be insured for any future possible disability benefits through June 30, 1970.

2) The Hearing Examiner finds that through the date of this decision, Mr. Lemon J. Townsend does not have one or more medically determinable impairments, either physical or mental, of the severity contemplated by the Social Security Act and Regulations for 'disability', so as to have prevented him from substantial gainful activity at the time alleged, May 13, 1918, and through the date hereof.

3) That the claimant has not established that he was under a 'disability' according to the July 30, 1965 Amendments definition in that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which could be expected to result in death or have lasted or could be expected to last for a continuous period of not less than twelve months and were of the severity contemplated by the Social Security Act and Regulations.

4) The Hearing Examiner also finds that Mr. Townsend's impairments were not so severe as to have precluded him from a return to his usual work as a painter, had he been so inclined, or to the other jobs suggested by the vocational witness, Mr. Charles Elton.

## DECISION

It is the decision of the Hearing Examiner that the claimant, Mr. Lemon J. Townsend, was not entitled to either disability insurance benefits under Section 223(a) or to a period of disability under Section 216(i) of the Social Security Act for any time commencing in May 1967 as alleged in his application filed on June 1, 1967." (Tr–17–18)

██ ██  The court must conclude from the evidence that the findings of the Secretary are supported by substantial evidence and are binding upon this court. Rose v. Cohen, 6 Cir., 406 F.2d 753 (decided February 13, 1969); Walters v. Gardner, 6 Cir., 397 F.2d 89 (1968); Lewis v. Gardner, 6 Cir., 396 F.2d 436 (1968); Lane v. Gardner, 6 Cir., 374 F.2d 612 (1967).

██ ██  The plaintiff's attorney, in his brief, states that the hearing examiner's decision and the defendant's brief, which incorporate the medical evidence therein may be based in part on an inability to read the handwriting of the two doctors who examined the plaintiff at the University of Kentucky Medical Center. I must agree that this handwritten report taxes the ingenuity of the court and portions of it are illegible. The court is satisfied, however, that the report from the University Hospital contains no evidence of any disabling impairment within the meaning of the Statute. 42 U.S.C. § 423(d) (3). Prior to the hearing held on December 20, 1967, the hearing examiner asked Mr. Hancock if he had any objection to the admission of any of the listed documents. Mr. Hancock replied, "No, sir. I've read the list of Exhibits and have also examined the Exhibits and have no objection to them." This handwritten report, some portions of which, as heretofore stated, are illegible, was filed, without objection, as Exhibit 15. It is now too late for the plaintiff to say that the report contains material which, if legible, would sustain the plaintiff's position. The burden is on the applicant to establish that he is entitled to the benefits of the Act. Whitt v. Gardner, 6 Cir., 389 F.2d 906 (1968); Nelson v. Gardner, 6 Cir., 386 F.2d 92 (1967); Justice v. Gardner, 6 Cir., 360 F.2d 998 (1966).

In the case of King v. Gardner, 6 Cir., 370 F.2d 652 (1967), the plaintiff established that he was subject to epileptic seizures, but the court held that:

"(I)t was his burden, however, to establish that he was thereby prevented from engaging in 'any substantial gainful activity' within the meaning of the Social Security Act.  *  *

"Sharing the District Judge's feeling, we regret that we cannot provide Mr. King with a remedy that might in some degree make up to him the burden of

his affliction. The law, however, has not given us the means to do so."

In the instant case the plaintiff has not even claimed a disability as severe as epileptic seizures. Yet he too has failed in establishing his entitlement to benefits under the Act.

The defendant's motion for summary judgment should be sustained and an order to that effect is this day entered.