**William TOWNSEND, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE,**
**Defendant.**

**No. 2160.**

United States District Court,
E. D. Kentucky,
Lexington Division.

April 29, 1971.

Todd, Compton & Odell, by R. Bruce Stith III, Lexington, Ky., for plaintiff.

Eugene E. Siler, Jr., U. S. Atty., by William D. Kirkland, Asst. U. S. Atty., Lexington, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

The plaintiff, William Townsend, brings this action under the provisions of 42 U.S.C. § 405(g). He filed an application for disability benefits on March 5, 1969, alleging that he became unable to work on February 13, 1969, because of "heart condition—growth in heart". (Exhibit 1, Tr—48–51). The application was denied initially and upon review. The plaintiff requested a hearing, at which he appeared with his wife and testified. On March 26, 1970, the hearing examiner found that the plaintiff was not entitled to disability benefits. On May 13, 1970, this decision was upheld by the Appeals Council and thus it became the final decision of the Secretary. This action was timely filed on July 7, 1970.

The record is before the court on the motions for summary judgment filed by the plaintiff and defendant, respectively. Briefs have been filed in support of the motions and the transcript of the record of proceedings relative to the application of Mr. Townsend was filed as a part of the answer of the defendant.

The plaintiff is now 51 years of age. He lives with his wife and fifteen year old son in the low rent housing project of Winchester, Kentucky. He left school before completing the third grade and has worked as a farmer, in a tobacco redryer, in construction work, and as a truck and bus driver. At the time he quit working in 1969, he was employed as a truck driver and has had no income since June of that year except from public assistance.

At the hearing on December 22, 1969, he testified that he weighed 190 pounds and was on a diet but that it was not "taking (him) down like it ought to". (Tr—36). His chief complaint is a hurting in his chest which is caused by a hiatal hernia. He stated he left his job as a truck driver because if he had to twist the wheel and back up, he got a pain in his chest. The attacks of pain, according to the plaintiff, last from fifteen minutes to an hour or longer. (Tr—43). He also stated that he got very little sleep and that he had taken so much "sleeping medicine" that it had lost its effect. (Tr—38). He walks around the block (about one half mile) each day because the doctor told him to

get out and walk. He attends church and visits his relatives.

The medical evidence discloses that the plaintiff was referred to the University of Kentucky Medical Center by his personal physician, Dr. John Hubbard of Winchester, Kentucky. Exhibit M-1 (Tr—89-90) is the Discharge Summary of his first admission on March 13, 1969. It gives his chief complaint as "burning epigastric pain of 20 to 30 years duration". He was treated for a hiatal hernia and his symptoms improved significantly. Therefore, it was decided that surgical repair of the hiatal hernia was not indicated. He was discharged on March 19, 1969, and told to return in two months. In May of 1969, the plaintiff was again seen at the Medical Center. Although he had been put on a diet, he had gained nine pounds and was again encouraged to lose weight. He still complained of epigastric pain after meals, when lying down and at bedtime. He was continued on medication and told to return in one month. (Tr—91-92).

In June of 1969, he was seen in the Gastro-Intestinal Clinic of the Medical Center and, although probable esophagitis (inflammation of the esophagus) was indicated from the examination, the plaintiff refused an esophagoscopy (inspection of the interior of the esophagus). He was continued on symptomatic treatment for the hiatal hernia. (Tr—105).

In August of 1969, the records of the Medical Center show that his complaints relating to the hiatal hernia were "still relieved" by the prescribed medication; that he complained of insomnia due to "worries"; and that he was "very obese". (Tr—106). He was told to return in three months.

In November of 1969, a very brief (almost illegible) report was made by the Medical Center, but it indicates no change in the plaintiff's condition; that he is to continue on treatment for the hiatal hernia; and to return in six months. (Tr—109).

On December 1, 1969, the Medical Center reported that, "In spite of this regimen (bland diet, 3 major meals and 2 snacks, elevated bed and medication) still has periodic epigastric and substernal distress." It was noted that he still refused an esophagoscopy. The examining physician made a recommendation as to when the antacids should be taken and also prescribed another medication. It was his opinion that "(I)f this doesn't help, believe he will be more receptive to esophagoscopy." (Tr—110).

On December 22, 1969, the Medical Center reported that the patient had done "remarkably well" on above regimen. He was sleeping better, but still had problem with epigastric pain and substernal burning when bending and straining. "Believe he is certainly not *totally* disabled—could work at desk job." (Tr—111).

On January 26, 1970, the report shows that he was continuing to "do well on antacid, diet regimen. * * * States he is able to sleep at night now since he started taking Mylicon which he feels keeps gas off his stomach. Presently looking for a night watchman's job." (Tr—111).

On February 23, 1970, the plaintiff was seen at the Medical Center. He stated that he had had the flu twice since he was there last; that about two weeks before he had had pains in his arm and chest; that treatment at the Clark County Hospital relieved the chest pain but not the arm pain; that he was told that he was 'about to have a heart attack', but no electrocardiogram was taken. It was noted in the report that he "still refuses esophagoscopy". An ECG (electrocardiogram) taken on that date was indicated as normal. (Tr—122).

The plaintiff's personal physician, Dr. Hubbard, has repeatedly reported that he is totally disabled. His first report was on February 22, 1969, and stated:

"This is to certify that Bill Townsend is totally disabled with what has tentatively been diagnosed as a hiatus

hernia. Further tests will be made at the University." (Tr—112).

His second report on May 27, 1969, stated that he first saw Mr. Townsend on February 3, 1969. Under "History" he said:

"Patient has suffered with epigastric pains & low chest pains for several months. Unable to work. Has been seen by me & referred to the University Hospital in Lexington, Ky. Diagnosis of hiatus hernia was made. Surgery was contemplated, then decided against. Pt is now on antacids, antispasmodics, rest. Duration of total disability undetermined." (Tr—98).

As to "Physical Findings" he merely stated: "(P)ertinent findings on x-ray at University Hospital in Lexington", and under "Laboratory and Special Studies" he said, "At University Hospital". His "Diagnoses" was "Hiatus hernia, severe." (Tr—98–101).

Thereafter in short statements, Dr. Hubbard has reported that Mr. Townsend is totally disabled because of a hiatus hernia. These reports are dated June 25, 1969 (Tr—103), September 30, 1969 (Tr—112), and November 5, 1969 (Tr—108).

The findings of the hearing examiner are as follows:

"(1) Claimant meets the special earnings requirements for disability purposes (Section 223(c) (1) (B) (i) of the Social Security Act as amended) at least through December 31, 1973.

"(2) Claimant has *not* established that on or before the date of this decision, he has been under a disability as defined in Sections 216(i) (1) (A) and 223(d) (1) (A) of the Social Security Act as amended, that is an 'inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" (Tr —17).

It is well settled that the court does not consider the case de novo and judicial review is limited to inquiry as to whether there is substantial evidence in the record as a whole to support the findings of the Secretary. Ross v. Richardson, 6 Cir., 440 F.2d 690, decided April 9, 1971; Rose v. Cohen, 6 Cir., 406 F.2d 753; Wolf v. Gardner, 6 Cir., 386 F.2d 295.

The court must conclude that the findings of the Secretary are supported by substantial evidence. It is undisputed that the plaintiff is suffering from a hiatal or hiatus hernia. This is defined in Stedman's Medical Dictionary (Unabridged Lawyers' Edition) as a hernia "of a part of the stomach through the esophageal hiatus (an aperture or fissure) of the diaphagm." In the words of the plaintiff:

"What it is when I first went in the hospital they run the x-rays over there, there was five inches of my lower stomach pushed up through this hernia up above and under my heart, so that's the reason I got to lose a lot of weight, so when I go back down, then they're going to try to operate and sew that place up, but the surgeon told me that right now the way it was, it would be one chance out of a hundred where I could come out of an operation, and it would be a success. So that's the reason they got me on this diet, to try to lose this weight, and see that they're gonna do from there." (Tr—40–41).

The *doctors at the Medical Center* consistently reported that the condition was responding to treatment and inferentially, at least, felt that surgery was not recommended. It was suggested that he submit to an esophagoscopy. This is a diagnostic procedure in which an inspection of the interior of the esophagus is made by means of an instrument designed for this purpose. The plaintiff refused to have this examination on three or more occasions.

As stated in the hearing examiner's "Evaluation of the Evidence Herein":

"Claimant's primary involvement is his hiatal hernia. However the clini-

cal notes of the University of Kentucky Medical Center clinics disclose that it has responded well to symptomatic treatment, including a diet and frequent feedings. This is the case in the 'vast majority of symptomatic cases of hiatal hernia and early reflux esophagitis.' Cecil & Loeb Textbook of Medicine (13th ed. 1967) 845. Further, surgical intervention in more serious cases in most cases, has excellent results." (Tr—16).

■■ And as said in Henry v. Gardner, 6 Cir., 381 F.2d 191, 195 (6 Cir., 1967), cert. denied 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487, rehearing denied 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864:

"The fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence of proof of its disabling severity to warrant the award of benefits. Galli v. Celebrezze, 339 F.2d 924 (C.A. 9). An impairment that can be remedied by treatment will not serve as a basis for a finding of disability. 'An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity.' Section 404.1502(g), Social Security Regulations No. 4 (20 C.F.R. 404.1502(g) ). See also Purdham v. Celebrezze, 349 F.2d 828 (C.A. 4)."

■ While Dr. Hubbard was of the opinion that the plaintiff was totally disabled, the Secretary may believe or disbelieve the opinions of physicians or other experts within the realm of his duty to pass on the credibility of witnesses. Ragan v. Finch, 6 Cir., 435 F.2d 239 (1970). It can hardly be said that Dr. Hubbard's opinion that the plaintiff was totally disabled meets the definition of "substantial evidence". As stated in Reyes Robles v. Finch, 1 Cir., 409 F.2d 84 (1969), "And as to the scope of court review, 'substantial evidence' is a stringent limitation."

■ Courts naturally have sympathy for claimants who have worked as laborers for many years and who have physical ailments which cause them discomfort at times. They have the burden, however, of proving their entitlement to benefits under the Act.

In the case of King v. Gardner, 6 Cir., 370 F.2d 652 (1967), the plaintiff established that he was subject to epileptic seizures, but the court held that:

"(I)t was his burden, however, to establish that he was thereby prevented from engaging in 'any substantial gainful activity,' within the meaning of the Social Security Act. * * *

"Sharing the District Judge's feeling, we regret that we cannot provide Mr. King with a remedy that might in some degree make up to him the burden of his affliction. The law, however, has not given us the means to do so."

See also Townsend v. Secretary, etc. (D. C.E.D.Ky.), 296 F.Supp. 1030 (1969).

The defendant's motion for summary judgment should be sustained and an order to that effect is this day entered.