**Betty J. JOHNSON, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. 73–440.**

United States District Court, S. D. Ohio, E. D.

May 31, 1974.

**150**

James L. Mackin, Columbus, Ohio, for plaintiff.

William M. Milligan, U. S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

RUBIN, District Judge.

This is an action under the provisions of Title 42, United States Code, Section 405(g), for review of a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for social security disability insurance benefits.

This matter is before the Court on the motions of plaintiff and defendant for summary judgment.

Plaintiff filed an application for social security disability insurance benefits April 15, 1971 alleging that she became unable to work on October 15, 1969, at age 41. Her application was denied initially and upon reconsideration by the Bureau of Disability Insurance of the Social Security Administration.

Plaintiff then requested a hearing *de novo* before an administrative law judge. On April 19, 1973, plaintiff, represented by counsel, appeared and testified at a hearing before an administrative law judge. Dr. Ernest W. Johnson testified as a medical adviser; and Carl F. Heiser testified as a vocational expert. On May 24, 1973, the administrative law judge issued a decision finding that plaintiff is not disabled within the meaning of the Social Security Act. On August 16, 1973, the Appeals Council of the Social Security Administration adopted the decision of the administrative law judge as the final decision of the Secretary of Health, Education and Welfare.

Plaintiff was born March 31, 1928. She has completed the tenth grade of high school. She has been employed as an assembler in a mattress factory and as a barmaid.

Plaintiff was most recently employed as a mattress assembler at the Simmons Company in Columbus, Ohio. Her work required her to lift 65 to 70 pounds with a partner and carry the weight two feet. Her work involved bending, stooping,

standing, turning and the use of her arms, legs, and hands.

Plaintiff alleges that on October 6, 1969 while working, she fell and hurt herself.

Plaintiff was hospitalized twice at the Ohio State University Hospital in 1969. From February 13, 1969 to February 26, 1969, plaintiff was hospitalized for a total abdominal hysterectomy and the left surgical removal of a uterine tube and ovary. She was again admitted from November 26, 1969 to December 17, 1969. The final diagnoses were low back pain; and a small tumor on the right upper eyelid.

Plaintiff's original treating physician, Dr. J. Quinn Dorgan, Jr., a general practitioner and urologist sent a report dated December 23, 1970 to the Ohio State Department of Public Welfare stating that plaintiff was totally unable to engage in gainful employment. His diagnosis was that she had a partially herniated disc in the L-5 of the spine; a carpal tunnel syndrome of the left wrist and left subdeltoid bursitis; and peritendinitis.

Dr. Lester Seligson, a general practitioner and internist, made three medical reports on plaintiff's condition. On July 14, 1971, he reported to the Ohio State Bureau of Workmen's Compensation that plaintiff was unable to do effective work with her left wrist and hand, such as lifting and pulling. He stated that she was able to do light work as of December 1, 1971; and that she could return to regular work December 31, 1971.

On March 31, 1972, Dr. Seligson reported to the Ohio Bureau of Disability Determination that plaintiff suffered from a subacute and chronic sprain of the dorsal and lumbar back muscles; sprain of muscles of the right shoulder; arthritis of the left wrist joint and sprain of the left wrist; and a small ganglion on the dorsum of the left wrist. He was unable to state when plaintiff would be able to return to sedentary or light work.

On September 11, 1972, Dr. Seligson reported that he was still treating plaintiff. He stated that recent x-rays showed arthritis of the wrist joint and of the sacroiliac joints. He diagnosed her condition as including a sprain of the left wrist; neuritis of the left forearm extending to the left elbow; lumbosacral back sprain and sacroiliac back sprain; sprain of both knees; and aggravation of existing arthritis.

On or about October 8, 1971, Dr. W. Jerry McCloud, an orthopedic surgeon, examined plaintiff at the request of the Social Security Administration. He reported that plaintiff had a normal stance and gait. There were no medically demonstrable neurological deficits in her lower extremities. X-rays revealed a partial lumbarization of the first sacral segment. There was no evidence of vertebral fracture. There was moderate narrowing of the L5–S1 junction and minimal degenerative posterior changes. Dr. McCloud was unable to explain the severity of plaintiff's subjective complaints. He found no medical reason to restrict her activities of sitting, standing, stooping, lifting, carrying or bending to lift objects.

Dr. William Blum, a general practitioner, reported on March 7, 1972 to the Ohio Bureau of Disability Determination that plaintiff suffered from a lumbosacral sprain and strain with myositis; a trapezious myofascial strain; and a herniated nucleus propulsies. He stated that he did not know when plaintiff would be able to return to sedentary or light work.

Dr. James J. Powers, a specialist in physical medicine and rehabilitation, examined plaintiff on or about March 31, 1972 at the request of the Bureau of Disability Determination. He reported the following findings:

"The patient is an anxious female in no acute distress. She complains of some tenderness to palpation along the cervical paraspinals on the right. Neck range of motion for lateral bending of 60° bilaterally, rotation of

90° bilaterally, and full flexion and extension. Negative Spurling's sign. Deep tendon reflexes in the upper extremity are intact at the shoulder. Range of motion varied on different exams. The best I was able to get was forward flexion of 150°, abduction of 170°, external rotation of 90°, and internal rotation of 60°. Her fingers have full range of motion. No sensory loss noted. Muscle testing is unable to pick up any specific weakness. Low back: She can forward flex to within 12 inches of the ground. Lateral bending is symmetric, about 45°. She complains of tenderness along the paraspinals on the left side down over the buttocks and also tender over the greater trochanter. Straight leg raising in a sitting position is to 90°. From lying on her back at 45° on the right and 20° on the left, she complained of severe back pain. Rotation of the hip was normal. Deep tendon reflexes are active. No gross atrophy noted.

EMG was normal in the right upper extremity and left lower extremity. X-rays of the cervical vertebrae were taken. Impression: normal cervical vertebrae. X-rays of the lumbosacral vertebrae were also taken. Impression: essentially normal lumbosacral vertebrae.

This patient has mild limitation of range of motion at the shoulder which would prohibit any work that would involve working above her head or any heavy lifting. Otherwise, I can find no objective evidence for limiting her capacity.

Dr. Ernest W. Johnson, specialist in physical medicine and rehabilitation and Chairman of the Department of Physical Medicine at the Ohio State University College of Medicine, appeared and testified at the hearing before the administrative law judge as a medical adviser. He did not examine plaintiff. He reviewed the medical record and listened to her testimony. In his opinion, plaintiff has a mild limitation of the motions of her right shoulder as described by Dr. Powers. This would limit her ability to lift anything over her head or to engage in heavy lifting. Dr. Johnson was of the opinion that there was no medical evidence to substantiate plaintiff's complaints of a constant sharp low-back pain.

Dr. Carl F. Heiser, a vocational expert, also testified at the hearing before the administrative law judge. He testified that if plaintiff's statements of her complaints were accepted as true, she would be unable to engage in any substantial gainful activity in the national economy, taking into consideration her age, education and vocational experience. However, if one assumed the limitations found by Doctors McCloud and Powers, plaintiff could perform both of her former jobs and she could also perform other substantial gainful activity in the national economy.

■■ This Court's review of the decision of the Secretary is limited to a determination of whether his findings are supported by substantial evidence. Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972); Rose v. Cohen, 406 F.2d 753 (6th Cir. 1969); Wolf v. Gardner, 386 F.2d 295 (6th Cir. 1967). It is not the Court's function to resolve conflicts in the evidence or to determine issues of credibility. This is solely the function of the Secretary. Floyd v. Finch, 441 F.2d 73, 76 (6th Cir. 1971).

■ There is a conflict in the medical evidence between the diagnoses and professional opinions of Doctors Dorgan, Seligson and Blum, who believe plaintiff to be totally and permanently disabled, and the reports and opinions of Doctors McCloud and Powers, substantiated by the expert testimony of Dr. Johnson, who believe plaintiff to be able to engage in substantial gainful employment. The opinions of Doctors Powers and McCloud are supported by their examinations of plaintiff, x-rays and tests. Under such circumstances, the Court

cannot say that the Secretary's decision is not supported by substantial evidence.

Whereupon, the Court holds that the · decision of the Secretary is supported by substantial evidence, and therefore it is affirmed.

This action is hereby dismissed.