CHARLOTTE ANN LUTHER, *Infant, etc.* v. A. C. LUTHER, *Admr., etc., et al.*

(No. 8644)

Submitted February 8, 1938. Decided February 22, 1938.

*Marion R. Hersman*, for appellant.

*Jess Hammock, E. A. Marshall, Fitzpatrick, Brown & Davis* and *J. Frank Eaton*, for appellees.

HATCHER, JUDGE:

The infant plaintiff was born out of lawful wedlock. The subject of this review is her legitimacy under Code, 42-1-7, which provides: "The issue of marriages deemed null in law * * * shall nevertheless be legitimate."

Plaintiff is the child of Cedron Bowen, a resident of this state, who testified as follows: In the spring of 1930, she, an adult domestic, consented to marry R. L. Luther. He then gave her a wedding ring, saying that since they loved each other, they would need no preacher, but would simply rent rooms and live together as husband and wife. She demurred at first, but said that he, insisting, convinced her that she would be his wife under his plan and she consented to it. She admitted inconsistently, however, that she knew she would not be "really married" without a license and a preacher. He procured the rooms, and thereafter, though she continued in service, they spent the nights together. There had been no prior sexual intimacy between them. She says that he introduced her to his friends as his wife, but she could not recall the name of any such friends. In a few months, she became pregnant, and then asked him to marry her ceremonially. He replied that he could not do so because he was already lawfully married to another woman. This was the first the witness knew of his marriage. He assured her that they would continue to live as they had, and later he would secure a divorce and

marry her. The relationship between her and Luther continued unchanged until his death in 1935. In the meantime, the plaintiff was born, and was cherished and acknowledged openly by Luther as his child.

This suit was brought to obtain for plaintiff a child's share in her father's estate. The circuit court dismissed the bill.

Plaintiff's counsel advance this syllogism: the issue of a common law marriage is legitimated by Code, 42-1-7; the relationship between Cedron and Luther constituted such a marriage; therefore, plaintiff is legitimate. The minor premise, however, is not supported by the facts.

Code, 42-1-7, is one of our statutory inheritances from Virginia. It was prepared by a committee consisting of those outstanding lawyers and statesmen, Edmund Pendleton, George Wythe and Thomas Jefferson. It was new law, marking a radical departure from the common and statute law of England on the subject. It was first enacted in 1785. It has been adopted, usually verbatim, in many of the states, and with it, "the most liberal construction" recommended by an early Virginia court (1804) in *Stones* v. *Keeling*, 5 Call 143, *et seq*. No matter how liberal the construction, however, there must be a relationship which under the law is matrimonial before the law could deem it null and the statute would operate. A common law marriage, while invalid in this state, is recognized as *a marriage* within the meaning of the statute. *Kester* v. *Kester*, 106 W. Va. 615, 146 S. E. 625. But the mere agreement of a man and woman to live together as husband and wife, and copula pursuant thereto, are not all the essentials of such a marriage. *Foley* v. *Gavin*, 76 Colo. 286, 230 P. 618. When the marital ceremonies prescribed by law and custom are disregarded, the weight of modern authority exacts that for a marital status to be instituted by *consensus*, it must be attended with certain stabilizing elements, namely, lawful capacity to contract a marriage, and matrimonial intent, *bona fides*, on the side of at least one of the parties. *Fout* v. *Hanlin*, 113 W. Va. 752, 757, 169 S. E. 743. "To constitute a common law marriage, there must be an understanding in the present tense that the parties are hus-

band and wife, and they must * * * in good faith assume such relation * * * and believe in good faith that they are husband and wife." *Bracken* v. *Bracken,* 45 S. D. 430, 188 N. W. 46. Accord: *Chaves* v. *Chaves,* 79 Fla. 602, 84 So. 672, 676; 38 C. J., subject Marriage, sec. 89; 8 Am. Juris., subject Bastards, sec. 6; Schouler, Marriage, etc. (6th Ed.), sec. 1173-7. Because of Luther's existing marriage, his conduct lacked both elements: because Cedron was aware that she and Luther would not be "really married", her conduct lacked the element of good faith. Their relation under such circumstances, did not constitute an informal marriage. *Port* v. *Port,* 70 Ill. 484. And Code, 42-1-7, does not apply. See Annotation, L. R. A. 1916 C, 764.

The decree is affirmed.

*Affirmed.*