William C. GROVE, Sr., and Rozalia Miller, Administratrix of the Estate of William C. Grove, Jr., deceased, Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Appellee.

No. 7901.

United States Court of Appeals Fourth Circuit.

Argued Oct. 15, 1959.

Decided Nov. 3, 1959.

Howard I. Legum and Louis B. Fine, Norfolk, Va. (Fine, Fine, Legum, Weinberg & Schwan, Norfolk, Va., on brief), for appellants.

Daniel H. Payne, Norfolk, Va. (Wolcott, Wolcott & Payne, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

The father and the natural daughter of the deceased, William C. Grove, Jr., are here contesting for the proceeds, amounting to $4,000, of a life insurance policy issued by the Metropolitan Life Insurance Company pursuant to the Federal Employees' Group Life Insurance Act, 5 U.S.C.A. §§ 2091–2103. The statute provides for payment to a named beneficiary, or to the widow if no beneficiary is named, or "if none of the above, to the child or children of such employee," and last, in the absence of these, to the parents of the decedent.

The decedent, a resident of Norfolk, Virginia, died on March 8, 1956, having named no beneficiary. He had married one Ruth Harris, and on August 8, 1938, they were divorced. The decedent never lawfully remarried. The Insurance Company paid the proceeds to one Nan M. Grove, the guardian of a child, Margaret C. Grove, born as the result of a purported marriage between decedent and Nan Grove. William C. Grove, Sr., sued the Insurance Company, claiming that pay-

ment should have been made to him as the father of the decedent.[1]

Nan Grove testified that she and the decedent went through a marriage ceremony on December 24, 1937, in Burlington, North Carolina, but no documentary evidence of the ceremony was produced. There was testimony, however, that Grove and she lived together as man and wife from 1937 until 1946; that relatives believed them to be married; and that even after the couple were separated, and until his death, Grove continued to send her letters and greeting cards in which he referred to her as his wife. In 1938, the child, Margaret, was born, and the birth certificate stated that she was the daughter of Nan M. Grove and William C. Grove. There is no dispute that Margaret is the decedent's natural daughter; the only question is whether she legally qualifies as Grove's "child" under the above-mentioned provision of the Federal Employees' Group Life Insurance Act.

Unquestionably, the marriage ceremony, if such took place, between Nan Grove and the decedent was a nullity, because the decedent was married at the time to Ruth Harris. The trial judge held and both parties concede that, as Virginia was the domicile of the decedent, Virginia law is controlling as to whether Margaret Grove is entitled to the proceeds as his "child." See La Bove v. Metropolitan Life Insurance Company, 3 Cir., 1959, 264 F.2d 233, holding that, under the Federal Employees' Group Life Insurance Act, whether a person is to be considered a child of the decedent is to be determined by the law of the state of the decedent's domicile.

The parties agree that whether Margaret is entitled to the proceeds under Virginia law depends upon whether she is a legitimate child according to the Virginia statute, § 64–7 of the Code of Virginia, 1950, which provides: "The issue of marriages deemed null in law

---

[1] The decedent's sister, Rozalia Miller, Administratrix of his estate, was joined as plaintiff below and appellant here, but it was agreed by counsel at the argument of the appeal that she has no interest in the action and is not a proper party.

\* \* \* shall nevertheless be legitimate." It has been settled by the Virginia cases that this statute is effective to legitimize children of bigamous marriages. Stones v. Keeling, 1804, 5 Call, Va., 143; Goodman v. Goodman, 1928, 150 Va. 42, 142 S.E. 412. The question therefore is whether there was sufficient evidence of a null marriage to call the statute into operation.

The District Judge pointed to the testimony that the decedent and Nan Grove lived together openly for several years as man and wife, and that his relatives considered them married. Because of these facts, coupled with Nan Grove's testimony that there had been a marriage ceremony in 1937, the District Judge concluded that the evidence was sufficient to establish an invalid marriage between them. Accordingly, he held Margaret legitimate under the Virginia statute and thus entitled to the insurance proceeds.

■ The appellant contends that Nan Grove should not have been allowed to testify to a marriage ceremony between her and the decedent, and to her living with him as,his wife from 1937 to 1946. Appellant's reliance is upon § 8–286 of the Code of Virginia, 1950, which provides that no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony in an action by an administrator or heir of a person who is dead. However, even if we assume the applicability of the statute, ample corroboration of her testimony is to be found in the testimony of others that they considered William Grove, Jr., and Nan to be married, and in the decedent's letters above referred to in which he repeatedly addressed her as his wife.

In the District Court counsel for both sides apparently focused inquiry upon the sufficiency of the testimony to prove a ceremony, and the District Judge accepted this approach. He treated the testimony of cohabitation and acknowledgment as corroboration of the asserted ceremony, and found it sufficient.

Even assuming, without deciding, that the evidence was not sufficient to establish an actual ceremony of marriage between the decedent and Nan Grove, we think that under the Virginia decisions the child is nevertheless legitimate.

The District Judge's finding that the decedent and Nan Grove lived together as husband and wife for several years, that the decedent referred to her as his wife, and that others considered them married, is clearly supported by the evidence. These facts, considered independently of the claimed ceremony, would be sufficient to show a common law marriage between the parties from 1938 in a state recognizing such marriages.[2]

■ Although Virginia denies validity to common law marriages, it has been decided by the Supreme Court of Appeals

---

2. The appellant sought to rely on Eldred v. Eldred, 1899, 97 Va. 606, 34 S.E. 477, where the evidence was held insufficient to show a marriage ceremony; but the factual situation in Eldred was quite different. There, after the death of an elderly gentleman, his housekeeper claimed that she was his wife, and therefore her daughter was his lawful heir. As in the instant case, there was no documentary evidence of the claimed ceremony of marriage. However, in Eldred, unlike the present case, many witnesses testified that in the community the parties were not considered married; that although they lived in the same house they did not live together as husband and wife; that the decedent habitually referred to the housekeeper as "Miss Keiner" and not as his wife; and that other servants did not treat the housekeeper as the wife of their master. Because of the heavy contradiction of the evidence adduced by the housekeeper to show cohabitation as man and wife, the Virginia court held that the evidence failed to support the claim of a ceremonial marriage. In the case before us, the evidence is clear that the parties held themselves out, for a considerable period, as a married couple.

For another reason, Eldred is distinguishable. The only issue there was whether a ceremonial marriage took place; the contention does not appear to have been considered that the housekeeper's child was legitimate under the statute because of an invalid common law marriage.

of that state that offspring of such marriages are made legitimate by § 64–7 of the Code of Virginia (1950). In Offield v. Davis, 1902, 100 Va. 250, 263, 40 S.E. 910, 914, where the court held such marriages invalid in Virginia because of the absence of the ceremonial requirements of the statutes, the court took occasion to say:

> " * * * If such a marriage [common law] in this state should be held valid, it would seem to have been a useless effort on the part of our legislature, by certain acts passed, to protect innocent offsprings of an illicit cohabitation. * * *"

This language was quoted in McClaugherty v. McClaugherty, 1942, 180 Va. 51, 21 S.E.2d 761, 766, where the dictum of Offield v. Davis became the court's explicit holding. The statute legitimizing the children of marriages "null in law" was held effective to legitimize the child of a common law marriage.[3] In that case, the plaintiff sued her father for maintenance and support. There was testimony of a ceremonial marriage, which the father denied. The plaintiff, however, as the court distinctly pointed out, relied on the fact that she was the issue of a common law marriage, which is concededly null in Virginia, but she claimed legitimacy by reason of the statute. In upholding her contention, the court adopted the opinion of the Chancellor below, Judge Keister, who after reviewing the cases, had said:

> " 'These decisions of the Supreme Court of Appeals of West Virginia, and dicta of the distinguished judges of our own Supreme Court of Appeals, concurred in by the entire court, are each entitled to much respect. *They concur in construing section 5270 to legitimize the issue of common law marriages.* This construction is supported by sound reasoning from the Virginia decision. There is no Virginia authority to the contrary.

> " 'To deny the protection of this section to the innocent and unoffending offspring of common law marriages requires the most narrow and technical construction of the phrase "marriage deemed null in law," defeats the intention of the Legislature as determined by our Virginia court, and violates the principle of liberal construction laid down by them.' " (Emphasis supplied.)

■ Clearly, according to Virginia law, as viewed by the highest court of that state, the District Court was correct in declaring Margaret C. Grove the legitimate child of the decedent, and therefore entitled to the insurance proceeds.

Affirmed.

---

3. Both in his brief and in oral argument, it was asserted by the decedent's father that the Virginia statute legitimized the children of invalid *ceremonial* marriages only. The case relied upon for the contention that a ceremonial marriage is necessary, and a common law marriage insufficient, for the statute to operate is Vanderpool v. Ryan, 1923, 137 Va. 445, 119 S.E. 65, 66. However, neither that case nor any other Virginia case has required a ceremonial marriage for § 64–7 to be applicable.

In Vanderpool, the court contrasted a void common law marriage with a meretricious relationship, and held that the latter was not sufficient to invoke the statute to legitimize the offspring. The court said: "The facts shown in this case are insufficient to prove even a common-law marriage, but clearly indicate a meretricious union." And later, the court pointed out, in regard to the statute: "So far as we have observed, it is essential, in order to legitimize issue under this statute, that there be a marriage of some kind, or the statute can have no application." This case merely holds that a marriage of some sort, and not an avowedly illicit affair without pretense of a marriage relationship of any kind, is required for the offspring to be legitimate. It does not say that a common law marriage is insufficient.

Finally, even if the Virginia law was not clear on the subject before the McClaugherty case, supra, that case settled the question in favor of the view that offspring of a common law marriage are deemed legitimate in Virginia.