**Betty Lou COOK, Plaintiff,**

v.

**CAROLINA FREIGHT CARRIERS CORPORATION, a corporation of the State of North Carolina, and Henry Schronce, Jr., Defendants.**

**Civ. A. No. 3390.**

United States District Court
D. Delaware.

April 28, 1969.

---

Sheldon N. Sandler, Wilmington, Del., for plaintiff.

Warren B. Burt, Wilmington, Del., for defendants.

## OPINION

STEEL, District Judge.

On November 1, 1966, Albert A. Cook, the alleged common-law husband of the plaintiff, Betty Lou Cook, died as a result of being struck in Delaware by a tractor-

trailer owned by the corporate defandant, Carolina Freight Carriers Corp., and operated by the individual defendant, Henry Schronce, Jr. Thereafter, plaintiff, claiming to be the "widow" of the decedent, Albert A. Cook, filed an action under 10 Del.C. § 3704(b) against defendants based upon their alleged negligence. 10 Del.C. § 3704(b) provides:

> "Whenever death is occasioned by unlawful violence or negligence, and no suit is brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or, if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned."

Defendants have filed an answer in which the second affirmative defense alleges that plaintiff is not the legal widow of the decedent and hence has no right of action under 10 Del.C. § 3704. This same defense is asserted by defendants as grounds for a motion for summary judgment. Interrogatories to all parties have been answered and the deposition of the plaintiff has been taken on behalf of the defendants. No genuine issue of relevant fact exists, the sole question being whether plaintiff is the "widow" of decedent within the meaning of 10 Del.C. § 3704(b).

Jurisdiction exists by reason of diversity of citizenship and an amount in controversy in excess of $10,000, exclusive of interest and costs.

The pertinent facts are as follows:

Plaintiff was first ceremonially married to the decedent, Albert A. Cook, in Kentucky in 1945. Five children were born of this marriage. Early in 1962 a divorce dissolving the bonds of matrimony was obtained. A few months later the plaintiff and Cook "went back together." Decedent moved into the residence occupied by plaintiff and the five children. When plaintiff and decedent were reunited in West Virginia they intended to take each other back as husband and wife, talked about it in those

terms, mutually consented to so consider themselves, and held themselves out as such.

Two months after their resumption of relations as husband and wife in West Virginia, plaintiff and decedent moved with the children to Florida, where they continued to cohabit and consider themselves man and wife. So far as they were concerned the common-law remarriage in West Virginia continued in effect.[1] Plaintiff testified (Deposition 37–38) as to the nature of the understanding between her and decedent when they moved to Florida:

"Q. And it was at that time [in West Virginia] that you and he entered into the understanding that you were man and wife and treated each other in that fashion?

A. Yes.

Q. And you considered yourselves for all purposes man and wife? As of that time?

A. Right.

Q. Then in accordance with that when you moved down here [to Florida], of course, you continued to assume that you had been married and were continuing your relationship of man and wife and everything was the same as it had been established in West Virginia?

A. Right."

Except for a three or four week visit to West Virginia, plaintiff and decedent continued to reside and cohabit in Florida until decedent's death in 1966.

■■ The words and actions of plaintiff and decedent in West Virginia constituted a common-law marriage under the law of West Virginia. Luther v. Luther, 119 W.Va. 619, 195 S.E. 594, 595

(1938), a fact which defendants concede.[2] Under the law of West Virginia a common-law marriage is recognized as a marriage, but is deemed null and void and of no effect as between the husband and wife. If a common-law marriage is proven the children of such marriage are deemed legitimate. Luther v. Luther, supra; Kester v. Kester, 106 W.Va. 615, 146 S.E. 625, 626 (1929).

■■ Florida recognizes common-law marriages to be valid. Florida also does so where the parties move to Florida even though the marriage relationship originated in a state which refused to recognize common-law marriages. Navarro, Inc. v. Baker, 54 So.2d 59 (Supreme Ct. Fla.1951).

■ The parties agree that although Delaware does not recognize as valid common-law marriages contracted in Delaware, it will recognize as valid a common-law marriage contracted in a state where its validity is recognized.[3] Anonymous v. Anonymous, 7 Terry 458, 85 A.2d 706, 715 (Super.Ct.Del.1951) aff'd sub nom. DuPont v. DuPont, 8 Terry 231, 90 A.2d 468 (Supreme Ct.Del.1952), cert. denied, 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651 (1952); Petras v. Petras, 7 Boyce 290, 105 A. 835, 836 (Super.Ct.Del.1919).[4]

In the instant case defendants make two arguments against the validity of the marriage: (1) since the marriage was invalid in West Virginia where the common-law marriage relationship arose, that law, rather than Florida law, is dispositive against the plaintiff's contention that she is the widow of decedent, and (2) even under Florida law the marriage was not valid since the record allegedly shows no "present mutual assent" in Florida to the contract, present mutual assent being

---

1. *See* defendants' first brief in support of their motion for summary judgment 6–7.

2. Defendants' first brief in support of their motion for summary judgment 6–7.

3. Id. at 12–14; plaintiff's answering brief in opposition to defendants' motion for summary judgment 3.

4. Despite the Court's statement in *Petras*, that the law of the state where a common-law marriage took place determined its validity in Delaware, the question stated by the Court was whether Delaware would recognize a common-law marriage "that is entirely valid under the laws of a state where the parties lived and from which they came." (105 A. at 837).

a prerequisite to the validity of the marriage under Florida law. In re Klinger's Estate, 73 So.2d 50 (Fla.Supreme Ct. 1954).

■ The second contention is conclusively answered by Navarro, Inc. v. Baker, 54 So.2d 59 (Supreme Ct.Fla.1951). There, a common-law marriage had its inception and consummation in Connecticut, a state which failed to recognize such a union. Later the parties returned to Florida, where they had been living prior to an earlier divorce. In asserting the invalidity of the common-law marriage in Florida it was contended that there had been no agreement *per verba de praesenti*. The Court rejected the argument. It stated that when the circumstances of the reunion of the parties when considered together with their testimony of their subsequent cohabitation and repute, the trial court committed no error in concluding that there had been an agreement *per verba de praesenti*. It said (54 So.2d at 60);

> "True, no positive statements were exchanged when they agreed to resume relation of husband and wife, but the circumstances surrounding their meeting were more eloquent and forceful than formal language."

In conclusion the Court said (*id.*):

> "The final question presents the effect upon the validity of the marriage of its having been incepted and consummated in a state where such unions are not recognized. Our view is that this was no impediment to the marriage relationship after the parties had returned to Florida and continued to live here openly as man and wife. Travers v. Reinhardt, 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865."

In the case at bar the parties have agreed that the plaintiff and decedent entered into a common-law marriage in West Virginia and that when they moved to Florida they considered themselves man and wife, continued to cohabit, and so far as they were concerned the common-law marriage in West Virginia continued in effect. Under this agreed state of fact no basis exists for defendants to contend that the record fails to disclose a "present mutual assent" in Florida to the marital contract. So far as Florida law is concerned the plaintiff and decedent had the status of a common-law husband and wife.

The final question involved is whether West Virginia law which fails to recognize a common-law marriage, or Florida law under which such a marriage is valid, should be followed in Delaware.

■ A Federal District Court sitting in a diversity case is bound to follow the conflict of laws rule of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

It has been pointed out previously that Delaware Courts held in Anonymous v. Anonymous, *supra*, and Petras v. Petras, *supra*, that the law of the place where a common-law marriage was entered into will determine its validity in Delaware. But neither of the cited cases involved situations like the current one.

When circumstances exist like those at bar, the authorities generally hold that although initially an impediment exists to the recognition of a common-law marriage under the laws where it was entered into, that impediment will be lifted and the marriage recognized when the parties move into a state where such a marriage is deemed to be valid. 55 C.J.S., Marriage § 36; 35 Am.Jur., Marriage § 227. In Sturm v. Sturm, 111 N.J.Eq. 579, 163 A. 5 (Ch.N.J.1932), a marriage performed in Galicia was defective under its laws because of the failure to publish banns and to properly record the event. Later the parties became domiciled in New Jersey. The events which had taken place in Galicia plus the transfer of the domicile of the parties to New Jersey, a state which recognized a common-law marriage, while the parties continued to maintain consenting minds with respect to their marriage status, was held to re-

sult in a valid common-law marriage. The Court said (163 A. at 10):

> "Hence, by the undisputed evidence, a contract of marriage existed when the matrimonial domicile was transferred to New Jersey. If the marriage was void in Galicia, it became valid as a continuing contract upon the transfer of the domicile to this state, the fact of continuing consent having been proved. Chamberlain v. Chamberlain, 68 N.J.Eq. 736, 62 A. 680, 3 L.R.A. (N.S.) 244, 111 Am.St.Rep. 658, 6 Ann. Cas. 483."

\* \* \* \* \* \*

> "The change of matrimonial domicile to a jurisdiction in which common-law marriages are deemed valid removed the impediment which previously existed."

The problem and its solution were tersely stated in National Union Fire Ins. Co. v. Britton, 187 F.Supp. 359 (D.D. C.1960), where the Court stated (187 F. Supp. at 364):

> "Virginia, however, does not recognize common-law marriages. Offield v. Davis, 100 Va. 250, 263, 40 S.E. 910. Consequently the agreement to become husband and wife was not effective, when made, since the Virginia law created an impediment to the creation of such a marriage relation. In 1946 the couple moved to Washington, where they continued living together for about ten years. The District of Columbia recognizes common-law marriages. Consequently, the impediment to the inception of the marriage was removed and since the relation continued pursuant to the agreement entered into previously, a common-law marriage was created as soon as the couple moved to the District of Columbia and continued living there."

Other cases which support the rule that an informal marriage, or a ceremonial marriage which does not comply with statutory formalities, contracted in a jurisdiction which does not recognize common-law marriages, is validated by a move of the parties to a jurisdiction where common-law marriages are recognized are: Travers v. Reinhardt, 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865 (1907); Farber v. U. S. Trucking Corp., 24 A.D.2d 1047, 265 N.Y.S.2d 324, 326 (1965); Weisel v. National Transp. Co., 14 A.D.2d 621, 218 N.Y.S.2d 725 (1961), motion for leave to appeal denied, 10 N.Y.2d 707, 221 N.Y.S.2d 1028 (1961); In re Singer's Estate, 138 N.Y.S.2d 740 (Sur.Ct.1955); Stilley v. Stilley, 219 Ark. 813, 244 S.W. 2d 958 (1952); Gunter v. Dealer's Transp. Co., 120 Ind.App. 409, 91 N.E.2d 377 (1950); Brown's Adm'r. v. Brown, 308 Ky. 796, 215 S.W.2d 971 (1948); Grammas v. Kettle, 306 Mich. 308, 10 N.W.2d 895 (1943). See also Annot., 104 A.L.R. 12–32.

In 2 Beale, Conflict of Laws § 123.1 (1935), it is similarly stated:

> "If a foreign marriage was defective by the law of the state of celebration, it may be cured by facts constituting a common-law marriage in a state which permits it."

While Delaware has never passed directly on the present question, it is believed that it would follow the general rule and recognize the validity of the common-law marriage between plaintiff and decedent. Petras v. Petras, *supra*, lends support to this conclusion. There a critical issue was whether the parties were legally married. They had initially been married by a notary public in 1904 in New York where they resided. Under the then existing laws of New York a notary public was without power to solemnize a marriage and common-law marriages could not at that time be contracted in New York. Nonetheless, the parties complied with all the prerequisites normally necessary to establish a common-law marriage. This relationship continued while the parties lived in New York and continued when they moved to Delaware in 1914. In the interim, in 1907, while the parties were residing in New York, a statute was enacted in New York which made common-law marriages valid. As a consequence, when the Delaware Court held that when the parties moved to Delaware and thereafter they

had the status of common-law husband and wife and held them to be legally married, even though their marriage in New York was initially invalid.

Thus, although in *Petras* the parties were initially neither married in accordance with the New York statute or initially occupied a valid common-law marital relationship, after the invalidity of the common-law marriage was later cured in New York statute, Delaware recognized that the common-law marriage was valid.

The rationale of this decision lends support to the conclusion that a Delaware Court, if faced with the present problem, would uphold the common-law marriage of plaintiff and decedent since the impediment of the West Virginia law was removed once Florida became their residence.

The defendant argues that Williamson v. Williamson, 9 Terry 277, 101 A.2d 871 (Super.Ct.Del.1954) and the later decision in the same case, Williamson v. Williamson, 9 Terry 379, 104 A.2d 463 (Super.Ct.Del.1954) require an opposite conclusion. There the plaintiff (husband) sought an annulment from the defendant (wife) on the grounds that the defendant had another husband, Correll, living at the time when the wedding to the plaintiff took place. The annulment was denied. The Court held that the law demanded "clear and conclusive" evidence of the prior marriage because an existing marriage carried with it the strongest of presumptions of validity which evidence of the prior marriage was not sufficient to overcome.

Unlike the *Williamson* cases, the case at bar presents no conflict between two marriages. Hence the powerful presumption which largely determined the outcome in *Williamson* plays no part in the present action. And unlike the alleged prior marriage in *Williamson*, the record discloses an agreement or contract of marriage between plaintiff and decedent. Thus the *Williamson* cases are clearly distinguishable on their facts from the instant one.

The plaintiff is the "widow" of decedent under 10 Del.C. § 3704(b) and is thus entitled to maintain this action in that capacity.

The motion for summary judgment will be denied.