Patricia L. KASEY, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary,
Health, Education and Welfare,
Defendant.

Civ. A. No. 69-C-88-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Sept. 14, 1971.

9. Id. at 260.

Dale Myers, Roanoke, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

This action involves the plaintiff's effort to set aside the Secretary's denial of her claim for children's insurance benefits under Section 202(d) of the Social Security Act, 42 U.S.C.A. § 402(d).

Initially the plaintiff applied for children's insurance benefits on April 8, 1966; however, this application was denied, and the plaintiff took no further action in regard to this initial application. On October 19, 1967, the plaintiff made a second application for these same benefits. This application was also denied, and the plaintiff was so notified by letter dated May 6, 1968. Upon the plaintiff's request, the denial was reconsidered; however, this reconsideration also resulted in a denial of the benefits. Subsequently, the plaintiff requested a hearing on the matter, and her request was granted. A hearing was held on February 17, 1969. The hearing examiner filed his decision on the claim on February 26, 1969, in which he denied the benefits sought, finding that while the claimant was a child of the wage earner, James A. Casey, within the meaning of the Act, she was not dependent on the said wage earner at the time of his death as required by the Act. Subsequently, on June 6, 1969, the Appeals Council denied the claimant's request for a review. On October 31, 1969, this court remanded the case to the Secretary for further administrative action. Pursuant to this order, the Appeals Council reconsidered additional evidence, but its decision re-

mained that the claimant was not entitled to children's benefits under the Act.

This matter comes now to this court under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare.

In support of his motion for summary judgment, the Secretary first attempts to invoke the doctrine of administrative res judicata, alleging that his decision on the claimant's first application of April 8, 1966 became final when the claimant failed to pursue further administrative remedies. In this regard the Secretary contends that the plaintiff's claim cannot now be reviewed by this court.

The purpose of the doctrine of administrative res judicata is to prevent a claimant from indefinitely reasserting his claim after the expiration of the time allowed to seek review. Easley v. Finch, 431 F.2d 1351, 1353 (4th Cir. 1970). While the regulation, 20 C.F.R. § 404.937, is phrased in such a manner as to imply that it is for the hearing examiner to assert the doctrine, courts have applied it in situations, in which it was not expressly relied on by the examiner, to bar relitigation of issues previously resolved by administrative decision. Domozik v. Cohen, 413 F.2d 5, 7 (3rd Cir. 1969). Furthermore, the doctrine has been judicially upheld in cases where there was no hearing on the previous application. Norkey v. Celebrezze, 225 F.Supp. 754 (E.D.Pa.1963); Rivers v. Celebrezze, 217 F.Supp. 141 (W.D.Va. 1963); Salyers v. Celebrezze, 214 F. Supp. 834 (W.D.Va.1962).

While it is true in the case at bar that a prior application was made which was not administratively pursued by the claimant, this court is of the opinion that the doctrine is not a bar to this proceeding.

The facts reveal that after the second application was denied, notification of such denial was sent to the claimant. That notification instructed the claimant that she could request a reconsideration, and that such request should be filed within six months. The claimant filed such a request which was denied, and the notification of that denial instructed the claimant of her right to request a hearing on the matter, and that such request should be submitted within six months. The claimant requested a hearing which resulted in a denial of benefits; however, the notification of the examiner's decision instructed the claimant of her right to file for a review by the Appeals Council if such request was submitted within sixty days. The claimant complied with these instructions in filing a request for review which was also denied. In the notification of that denial by the Appeals Council, the claimant was advised of her right to commence a civil action if done so within sixty days.

The claimant subsequently chose to commence such an action, and on October 31, 1969, this court remanded the case for further administrative action. Upon reconsideration, the Appeals Council again denied the claim, but in doing so took the position that the claimant was not a "child" within the meaning of the Act. This finding was inconsistent with the hearing examiner's decision, which the Appeals Council had previously affirmed, which had found the claimant to be a "child" within the meaning of the Act.

In light of the instruction given to the claimant, and the Appeals Council's change of position after remand, it is the opinion of this court that the Secretary cannot now assert the doctrine of administrative res judicata as a bar to the claimant's right to judicial review.

There appears to be no doubt that Patricia L. Kasey (also known as Patricia L. Casey), who was born on July 12, 1948, is the natural daughter of the wage earner, James A. Casey; however, dispute arises as to whether she was a "child" of the wage earner within the meaning of the Act. The pertinent provisions of the Act involving children's benefits are as follows. First, Section

202(d) of the Act, 42 U.S.C.A. § 402(d), provides in part:

(d) (1) Every child (as defined in section 416(e) of this title) of an individual * * * who dies a fully or currently insured individual, if such child—

(A) has filed application for child's insurance benefits,

\* \* \* \* \* \*

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

(ii) if such individual has died, at the time of such death, or

\* \* \* \* \* \*

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits * * *.

\* \* \* \* \* \*

(3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1) (C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—

(A) such child is neither the legitimate nor adopted child of such individual, or

(B) such child has been adopted by some other individual.

For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h) (2) (B) or section 416(h) (3) of this title shall be deemed to be the legitimate child of such individual.

Also Section 216 of the Act, 42 U.S.C.A. § 416, which is pertinent to the case at bar, provides in part:

(e) The term 'child' means (1) the child or legally adopted child of an individual, and (2) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed * * *.

Furthermore, Section 216(h) (2) (A) of the Act, 42 U.S.C.A. § 416(h) (2) (A), provides:

In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

As stated above, the hearing examiner found that the claimant was a child of the wage earner within the meaning of the Act, but, because he found no dependency, he denied the benefits sought. The Appeals Council concluded on June 6, 1969, that the hearing examiner's decision was correct; however, after this court ordered reconsideration of this matter, the Appeals Council took exception to the finding of the examiner that the claimant was a "child" within the meaning of the Act. In its report following this reconsideration the Appeals Council found that the claimant was not a "child" under the laws of the State of Virginia.

The facts reveal that the claimant's mother, Mrs. Helen Kasey, was lawfully married to one James F. Kasey; however, this individual was confined to the penitentiary, and Mrs. Kasey had entered into a relationship with the wage earner, James A. Casey, who was the natural father of the claimant. The question with which this court is faced is whether this relationship between Mrs. Kasey and the wage earner was a

"marriage" of the type which would qualify for consideration under the provisions of the Code of Virginia. Section 64.1–6 of the Code of Virginia (formerly Section 64–6) provides:

If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him as his own child or children before or after marriage, shall be deemed legitimate.

Since there was no valid marriage between the mother and the wage earner subsequent to the claimant's birth, this section is obviously inapplicable.

Section 64.1–7 of the Code of Virginia provides:

The issue of a marriage deemed null in law, or dissolved by a court, shall nevertheless be legitimate.

■■■ Virginia does not recognize common law marriage. Offield v. Davis, 100 Va. 250, 40 S.E. 910 (1902). However, common law marriage has been deemed a "marriage null in law" within the meaning of Section 64.1–7 so as to legitimize the issue of a common law marriage. McClaugherty v. McClaugherty, 180 Va. 51, 21 S.E.2d 761 (1942); Grove v. Metropolitan Life Ins. Co., 271 F.2d 918 (4th Cir. 1959). The question therefore arises whether the relationship in the case at bar can be considered a common law marriage, and, if so, does Section 64.1–7 apply to a bigamous common law marriage.

The Secretary contends that there can be no common law marriage because Mrs. Kasey lacked the capacity to enter into such a relationship since she was lawfully married to another man at the time. In support of this contention, the Secretary relies on a West Virginia decision interpreting the West Virginia code provision which is identical to Section 64.1–7 of the Code of Virginia. Luther v. Luther, 119 W.Va. 619, 195 S.E. 594 (1938). In *Luther*, the Supreme Court of Appeals of West Virginia, in holding that there could be no common law mar-

riage when one party was married, stated:

A common-law marriage, while invalid in this state, is recognized as a marriage within the meaning of the statute. * * * But the mere agreement of a man and woman to live together as husband and wife, and copula pursuant thereto, are not all the essentials of such marriage. * * * When the marital ceremonies prescribed by law and custom are disregarded, the weight of modern authority exacts that, for a marital status to be instituted by consensus, it must be attended with certain stabilizing elements, namely, lawful capacity to contract marriage, and matrimonial intent, bona fides, on the side of at least one of the parties. * * *

"To constitute a common-law marriage, there must be an understanding in the present tense that the parties are husband and wife, and they must * * * in good faith assume such relation * * * and believe in good faith that they are husband and wife. * * * *" 195 S.E. at 595.

Because one of the parties was married, the West Virginia court held that he lacked the capacity to enter a common law marriage, and because the woman knew of the marriage, she lacked the necessary good faith. This decision would seem to be conclusive but for the fact that it is not the holding of a Virginia court.

This court was unable to find a decision of the Virginia Supreme Court of Appeals which directly decides the issue set forth in this case. However, on the question of capacity, the Supreme Court of Appeals has held that the existence of a first marriage, still lawful, does not destroy the capacity to enter a second marriage even though the second marriage is null in law. Stones v. Keeling, 9 Va.(5 Call) 143 (1804). It has therefore been held that a bigamous marriage is a "marriage null in law" within the meaning of Section 64.1–7, and that the children of such a marriage are legiti-

mate. Stones v. Keeling, supra; Heckert v. Hile's Administrator, 90 Va. 390, 18 S.E. 841 (1894).

This court believes that under Virginia law, the existence of a lawful marriage would likewise not destroy the capacity to enter into a common law marriage. Apparently, the Court of Appeals for this circuit would support this conclusion because in the case of Grove v. Metropolitan Life Ins. Co., 271 F.2d 918 (4th Cir. 1959), it held that under Section 64.1–7 of the Code of Virginia, a daughter born of a bigamous common law marriage was legitimate, and therefore a child within the meaning of the Federal Employees' Group Life Insurance Act. While the capacity issue was not raised in that case, the court did not hold the existing marriage to be a bar to entering a common law marriage, even though the marriage was bigamous and therefore null in law.

In light of the above conclusion, it appears to this court that the only question which remains in determining the status of the claimant is whether her mother and father entered into a common law marriage. A finding of the existence of a common law marriage is essential in order to legitimize issue under Section 64.1–7 since there must be a marriage of some type for the statute to apply. Vanderpool v. Ryan, 137 Va. 445, 119 S.E. 65 (1923). The statute does not apply to cases where the cohabitation is merely a meretricious connection; there must be a bona fide agreement, express or implied, between the parties to live together as husband and wife. Francis v. Tazewell, 120 Va. 319, 91 S. E. 202 (1917). Apparently, no celebration or ceremony is necessary, but there must be an agreement which means that there must be intent to enter a marriage. Offield v. Davis, 100 Va. 250, 40 S.E. 910 (1902). In Grove v. Metropolitan Life Ins. Co., supra, the Court of Appeals of this circuit, interpreting the Virginia law, stated:

The District Judge's finding that the decedent and Nan Grove lived together as husband and wife for several years, that the decedent referred to her as his wife, and that others considered them married, is clearly supported by the evidence. These facts, considered independently of the claimed ceremony, would be sufficient to show a common law marriage between the parties from 1938 in a state recognizing such marriages. 271 F.2d at 920.

The evidence reveals that Mrs. Kasey and the wage earner lived together from about 1944 until 1953, and that they maintained a home during that period in the City of Roanoke. Furthermore, there is ample evidence in the administrative findings to the effect that they held themselves out as husband and wife during this time, and that they lived as husband and wife. This court is therefore of the opinion that a common law marriage existed between Helen Kasey and the wage earner, and that under the laws of Virginia, Patricia L. Kasey was issue born of that marriage, which although null in law, was sufficient for purposes of Section 64.1–7 to make the claimant a legitimate child. Therefore the Secretary's finding that the claimant was not a child within the meaning of the Act was incorrect.

This court feels that its finding that the claimant is a child within the meaning of the Act is supported by the finding of the Circuit Court of Franklin County, Virginia that Patricia L. Kasey was a legitimate child of the wage earner. That decree entered on July 29, 1967 found the claimant entitled to the wage earner's share of property which had been subjected to a partition suit. Furthermore, the Veteran's Administration recognized the claimant as the child of the wage earner, and therefore paid her benefits upon his death in 1955.

Since the wage earner and the claimant's mother separated in 1953, it is necessary to determine if the claimant was dependent upon him at the time of his death in 1955. See Section 202(d) (1) (C) (ii) of the Act, 42 U.S.C.A. § 402(d) (1) (C) (ii). The hearing ex-

aminer found there was no dependency at this time, therefore, the only question before this court is whether that decision, which subsequently became the final decision of the Secretary, was supported by substantial evidence.

The Secretary's regulations state that in determining the question of dependency under Section 202(d) (1) (C) of the Act, 42 U.S.C.A. § 402(d) (1) (C), the test is whether or not the father was "contributing to the support of the child" at the time of his death. 20 C.F.R. § 404.325(a) (2). This definition was judicially clarified in the case of Carey v. Social Security Board, 62 F. Supp. 458 (W.D.Ky.1945) where the court held that any contribution made must be regular and substantial. See also Hupp v. Celebrezze, 220 F.Supp. 463 (N.D.Iowa 1962). In *Carey*, the court stated:

> Such a construction seems both reasonable and liberal towards the child. It disregards occasional gifts and minor contributions at irregular intervals, but if the contributions are regular, whether voluntary or involuntary and constitute a material factor in the child's support, even though not the principal factor, it seems necessary to hold the parent was contributing to the support of the child.

> \* \* \* \* \* \*

> While the above construction may in some cases, as in the present one, operate against the child's right to the benefits in question, yet it will be seen that the same construction will operate in favor of the child's rights to such benefits when the question is whether or not the child was dependent upon a *father* at the time when he died. 62 F.Supp. at 460.

The question therefore is whether the Secretary's finding that the payments made by the wage earner in the case at bar were not "regular and substantial" is supported by substantial evidence. The Secretary contends that the claimant has failed to establish her dependency on the wage earner at the time

of his death. The administrative findings reveal that the wage earner and the claimant's mother separated in 1953 because the mother moved into a public housing project in which unmarried couples were not allowed to reside. The claimant's mother testified that during the period between 1953 and the wage earner's death, that she supported Patricia, but that the wage earner would give her some money out of his pension check. She also stated that the wage earner had been ill during this period with heart trouble, but that he would work when he was able. Mrs. Kasey also stated that she got a welfare check which was more than he would give her for Patricia. Mrs. Kasey had five children to support at this time and was receiving approximately one hundred and twenty-nine (129) dollars a month. The other children were not fathered by the wage earner. Mrs. Kasey said that the wage earner would occasionally bring food and would give her money at other times. She also stated that at times he would give money to Patricia.

There is considerable confusion in the record as to how much money was actually contributed by the wage earner. Apparently the contributions ranged from seven to thirty dollars a week when the wage earner was working, and when he was unable to work he would contribute smaller amounts from his monthly Veteran's Administration pension check.

While the record is unclear as to the regularity of these payments, and also to the amount of work which the wage earner was able to perform, it appears to this court that there was some regularity in his contributions. As to the substantiality of the payments it seems relatively certain from the record that the wage earner was contributing an average of thirty dollars per month. This court feels that the substantiality of these contributions can be measured by comparing the average contribution of thirty dollars a month to the portion of the welfare check of one hundred and twenty-nine dollars which could be at-

tributed to Patricia. Dividing this amount by six, the number of members of the household (Mrs. Kasey and five children), renders a figure of twenty-one dollars and fifty cents ($21.50) per family member. In light of this comparison, it is the opinion of this court that an average contribution of thirty dollars a month should be considered substantial in the case at bar. Therefore, this court feels that the wage earner's contributions meet the "regular and substantial" test of *Carey*, and therefore, finds that the claimant, Patricia L. Kasey, was dependent on the wage earner at the time of his death. In light of this finding, this court holds that the Secretary's finding of no dependency was not supported by substantial evidence.

For the reasons stated above, the Secretary's motion for summary judgment is denied and judgment is entered for the plaintiff. The Secretary is hereby ordered to pay the plaintiff the amount to which she is entitled.