Patricia L. **KASEY** a/k/a Casey, Appellee,

v.

Elliot L. **RICHARDSON**, Secretary, Health, Education and Welfare, Appellant.

No. 72–1102.

United States Court of Appeals, Fourth Circuit.

Argued May 12, 1972.

Decided July 13, 1972.

---

15. See appellee's brief at 11.

Stanton R. Koppel, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen. of the U. S., Kathryn H. Baldwin, Atty., Dept. of Justice, and Leigh B. Hanes, Jr., U. S. Atty., W. D. Va., on brief), for appellant.

Dale Myers, Roanoke, Va., for appellee.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

The Secretary of Health, Education, and Welfare appeals from an order of the district court allowing Patricia L. Kasey's application for surviving child's insurance benefits under the Social Security Act. Kasey v. Richardson, 331 F.Supp. 580 (W.D.Va.1971). We affirm.

I

Patricia L. Kasey was born in 1948 at Roanoke, Virginia, to Mrs. Helen Kasey and James A. Casey while Mrs. Kasey was legally married to a man confined in the state penitentiary. James A. Casey died in 1955 and this application for survivor's benefits followed.

■ Patricia's entitlement to benefits depends on whether she is recognized as the child of James A. Casey by the law of Virginia.[1] Under Virginia's void marriage statute, Va.Code Ann. § 64.1–7 (Repl. Vol. 1968), "[t]he issue of marriages deemed null in law . . . shall nevertheless be legitimate."[2] Although common-law marriages are not valid in Virginia, Offield v. Davis, 100 Va. 250, 40 S.E. 910 (1902), a child born of such a marriage is rendered legitimate by this statute for all purposes. Henderson v. Henderson, 187 Va. 121, 46 S.E.2d 10, 14 (1948); McClaugherty v. McClaugherty, 180 Va. 51, 21 S.E.2d 761, 766 (1942); see Grove v. Metropol-

itan Life Insurance Co., 271 F.2d 918 (4th Cir. 1959). The critical questions, therefore, are whether a bigamous common-law marriage is a marriage deemed null in law and, if it is, whether the relationship between Patricia's parents attained this status or was simply a meretricious affair. In reviewing the agency's decision, the district court was not bound to accept the Secretary's interpretation of state law. It was, however, required to accept his findings of fact if supported by substantial evidence. Wolf v. Gardner, 386 F.2d 295, 296 (6th Cir. 1967).

Relying on a West Virginia decision, Luther v. Luther, 119 W.Va. 619, 195 S. E. 594 (1938), that interpreted a statute identical to Virginia's, the Secretary ruled that because Mrs. Kasey was already married, she lacked the capacity to enter into a common-law marriage. He concluded that a bigamous common-law marriage is not a marriage deemed null in law which would legitimate Patricia under § 64.1–7.

■ The error in the Secretary's position, the district court correctly noted, is that in Virginia the continued existence of a prior marriage does not destroy the capacity to enter into a null second marriage within the meaning of § 64.1–7. Stones v. Keeling, 9 Va. (5 Call) 143 (1804). *Stones* involved a bigamous ceremonial marriage, but we agree with the district court that its teaching applies as well to a bigamous common-law marriage.

■ The district court also rejected the holding of *Luther*, adopted by the Secretary, that at least one of the par-

1. Section 216(h) (2) (A) of the Social Security Act, 42 U.S.C. § 416(h) (2) (A) (1970), provides in part:
   "In determining whether an applicant is the child . . . of a fully and currently insured individual . . ., the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual . . . was domiciled at the time of his death . . . ."

2. Thomas Jefferson, Thomas Ludwell Lee, George Mason, Edmund Pendleton, and George Wythe comprised the committee of the General Assembly of Virginia which drafted the predecessor of § 64.1–7 in 1779. It was enacted in 1785 and remained unchanged until 1849, when it was reenacted in its present form. Withrow v. Edwards, 181 Va. 344, 25 S.E.2d 343, 346 (1943). The slight change made in 1849 is immaterial to the issues in this case.

ties must in good faith believe that both had the capacity to marry. *Cf.* Wolf v. Gardner, 386 F.2d 295 (6th Cir. 1967).[3] We agree that *Luther* does not reflect Virginia law. Section 64.1–7 was enacted for the benefit of the children of invalid marriages, not for the benefit of their parents, and it must receive a liberal construction to achieve its purpose of rendering the children legitimate. McClaugherty v. McClaugherty, 180 Va. 51, 21 S.E.2d 761, 766 (1942); Stones v. Keeling, 9 Va. (5 Call) 143, 144 (1804). To emphasize that the parents' lack of capacity to marry and their knowledge of this bar do not deprive a child of the benefit of the statute, Judge Roane said in *Stones*:

"In the case of incestuous marriages, where the parties with full knowledge of the everlasting bar which does and ought to exist between them, enter into this contract, and produce an innocent offspring in defiance of laws human or divine; where you cannot suppose a circumstance of excuse, except the scarcely possible one of an ignorance of the consanguinity which exists between the parties, their offspring is not bastardized by our laws, on the contrary it is expressly provided . . . . that the nullification of such marriages shall not be construed to render the issue illegitimate.

"This is a strong case to shew the sense of the legislature, that the turpitude, or guilt of the marriage, shall not break upon the heads of their innocent offspring. . . ." 9 Va. (5 Call) at 146.

We conclude, therefore, that the district court correctly held that under Virginia law the child of a bigamous common-law marriage is legitimate.

II

Even though the parents' knowledge that they can not legally marry does not thwart a child's right of inheritance under § 64.1–7, the statute requires some semblance of a marriage. It does not legitimatize a child whose parents' cohabitation was meretricious. Vanderpool v. Ryan, 137 Va. 445, 119 S. E. 65 (1923). For a child to obtain the benefit of the statute in the absence of a ceremonial marriage, its parents must have agreed expressly or impliedly to live together as husband and wife, and they must have represented themselves to the community as married. *See* Grove v. Metropolitan Life Insurance Co., 271 F.2d 918, 920 (4th Cir. 1959). On this aspect of the case the Secretary ruled that the relationship between Patricia's parents was illicit, not rising to the dignity of even a bigamous common-law marriage. The district judge held that the Secretary's finding was not supported by substantial evidence.

Only three witnesses testified at the administrative hearing—Patricia, her mother, and her mother's sister. The bulk of the administrative record consists of copies of affidavits that had been filed with the Veterans Administration shortly after the death of Patricia's father,[4] and the record, including the transcript of evidence, of Childress v. Kasey, a 1967 chancery suit in the Circuit Court of Franklin County, Virginia, for the partition of real estate in which Patricia's father had possessed an interest. The administrative record discloses that for a number of years Patricia's parents lived together as man and wife in a home they maintained in Roanoke, Virginia. They separated about two years before Patricia's father

3. In *Wolf*, the court also rejected *Luther* and held that an Ohio statute similar to Virginia Code Ann. § 64.1–7 legitimated a child born of a bigamous common-law marriage. The Ohio statute adopted in 1805, followed verbatim the original Virginia enactment of 1785. Ives v. Mc-Nicoll, 59 Ohio St. 402, 53 N.E. 60, 61 (1899).

4. The Veterans Administration recognized Patricia as the daughter of James A. Casey.

died when she was five years old. Patricia's mother testified that while she lived with Patricia's father they held themselves out as man and wife, and there was ample corroborating evidence that they were regarded as such in the community.

Evidence to the contrary on which the Secretary primarily relies is the testimony of an elderly sister of Patricia's father that Patricia's parents did not live together, and several inconsistent statements made by Patricia's mother. The testimony of the elderly witness was shown on cross-examination to be confused and unreliable. Moreover, this witness did not testify at the administrative hearing, and the commissioner in chancery for the Circuit Court of Franklin County, the only fact finder who heard her testify, did not credit her testimony. The inconsistencies in the testimony given by Patricia's mother were more apparent than real. She did not waver in her declarations that she and Patricia's father had never been united by a marriage ceremony, but she was equally emphatic that they lived together as man and wife and held themselves out in the community as married.

The commissioner in chancery was the only trier of fact who heard all of the witnesses. He found, "In no sense of the word could the relationship that existed between [Patricia's parents] be considered as having been meretricious." This finding was approved by the circuit court, which decreed that Patricia was entitled to inherit from her father. Concededly, the Secretary is not bound by that suit. Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55, 58 (4th Cir. 1967). Nor are we. But the evidence on which the state chancery court based its decision was made a part of the administrative record, and it is difficult to perceive from this evidence how the chancellor could have reached any other conclusion. Moreover, the supplementary evidence received by the hearing examiner did not weaken Patricia's case. Indeed, the hearing examiner, who had an opportunity to evaluate all of the inconsistencies in the evidence attributed to Patricia's mother, reported that she was the common-law wife of Patricia's father. The appeals council, in reaching a contrary conclusion, appears to have treated the issue as a mixed question of fact and law. It said, "However, since the parties to the relationship were well aware that they could not marry, the record indicates their relationship was not an attempted common-law marriage but merely an illicit relationship. Accordingly, the Appeals Council finds that *the child did not acquire the status of* 'child' of the wage earner under the provisions of [§ 64.1–7] . . .." This holding was undoubtedly colored by the appeals council's erroneous conclusion of law that a bigamous common-law marriage would not satisfy the Virginia statute. Even apart from this error, the record taken as a whole establishes that the Secretary's finding of a meretricious relationship is not supported by substantial evidence. *See* Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 95 L.Ed. 456 (1951).

Since we have concluded that Patricia was the legitimate child of James A. Casey, she was entitled to a child's insurance benefits under the Social Security Act, 42 U.S.C. §§ 402(d) and 416(h) (2). It is unnecessary, therefore, to consider her alternative claim that she is entitled to a child's insurance benefits under 42 U.S.C. § 416(h) (3) (C) (ii) because her father was contributing to her support at the time of his death. Nor need we consider her claim in light of Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), which was decided while this appeal was pending.

The judgment of the district court is affirmed.

Affirmed.